442 A.2d 1098

**COMMONWEALTH of Pennsylvania**

**v.**

**Kenneth JACKSON, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 27, 1981.

Decided March 10, 1982.

Reargument Denied April 8, 1982.

592

Joel S. Moldovsky (Court-appointed), Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Paul Diamond, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

Appellant, Kenneth Jackson, was convicted by a jury of murder of the first degree, aggravated robbery and burglary in November, 1970. Post-verdict motions were denied and appellant was sentenced to life imprisonment for the murder conviction. Appellant was also sentenced to a consecutive ten-to-twenty year prison term for the robbery conviction and a consecutive probationary term of twenty years for the burglary conviction.

Appellant subsequently filed a direct appeal to this Court. All but one of the issues raised by appellant were without merit; however, this Court was unable to analyze appellant's claim concerning the voluntariness of his confession because the suppression court had failed to make specific findings of fact as required by Pa.R.Crim.P. 323(i). We remanded for an evidentiary hearing so that the required findings of fact could be made. *Commonwealth v. Jackson*, 464 Pa. 292, 346 A.2d 746 (1975).

On remand, appellant, represented by new counsel, attempted to raise the ineffectiveness of trial counsel. The court not only refused to allow appellant to challenge trial counsel's effectiveness but also refused to conduct the new evidentiary hearing. Instead, the court made findings of fact based on the original suppression hearing. On appeal, we again remanded, directing the court to conduct a new suppression hearing and to allow appellant to challenge trial counsel's effectiveness. *Commonwealth v. Jackson*, 483 Pa. 101, 394 A.2d 930 (1978).

Following the evidentiary hearing, the trial court again determined that appellant's confession was voluntary. The court further decided that appellant had not been denied the effective assistance of trial counsel. This appeal followed.

Appellant argues, *inter alia*, that the court erred in admitting his confession. Appellant claims that his confession was the product of an unlawful arrest as well as physical and psychological coercion, and therefore was involuntary. Further, appellant asserts that an unnecessary delay occurred between arrest and arraignment. Our review of the record compels our conclusion that appellant's confession was involuntary and is entitled to a new trial. The facts, as found by the suppression court, are as follows.

On March 7, 1969, Gaetano Piccirilli was shot and killed during an attempted robbery of his store in Philadelphia. The two black males involved fled immediately after the shooting. As a result of the police investigation, the authorities went to appellant's home at approximately 8:00 p. m. on March 8, 1969. The officers informed appellant that they wanted to discuss the Piccirilli murder with him. Appellant, eighteen years old at the time, agreed to accompany the officers to the Police Administration Building. While en route, appellant was informed of his *Miranda* rights. By the time appellant arrived at the Police Administration Building at 8:25 p. m., the officers assigned to interrogate appellant learned that Eugene Corbin had confessed to the Piccirilli slaying and, in doing so, implicated appellant.

The initial interview of appellant lasted from 8:35 p. m. until 9:30 p. m. After being taken to the bathroom and given coffee, appellant was again interviewed from 9:35 p. m. to 10:50 p. m. During this period, appellant agreed to undergo a polygraph examination. He was first escorted to the bathroom and then subjected to a polygraph examination which lasted from 11:00 p. m. to 1:35 a. m. Following a short fifteen minute rest, appellant was again interviewed and examined by the polygraph examiner from 1:50 a. m. until 4:05 a. m. During the entire interrogation until this point, appellant had denied any involvement in the slaying.

At 4:05 a. m., Corbin was brought into the room where appellant was being questioned. While being questioned by the officers, Corbin again orally confessed and implicated appellant. Corbin was then taken from the room at 4:15 a. m. Appellant was given his *Miranda* warnings which he waived. From 4:25 a. m. until 6:25 a. m., appellant dictated a full confession. Following a twenty-five minute rest, appellant read the confession into a tape recorder. Appellant's mother was brought into the room while the confession was being taped. At 7:20 a. m., appellant was allowed to confer privately with his mother until 8:30 a. m. Appellant was arraigned shortly before noon, approximately eighteen hours following his arrest.

The suppression court ruled that appellant neither requested the assistance of counsel nor indicated a desire to speak to any relatives who had been notified of his custody. Further, appellant did not request that the interviews be terminated, nor did he indicate a desire to remain silent. The court additionally held that the police made no threats or promises to induce appellant to confess, that no physical violence was used, and that the police at all times maintained a courteous and professional attitude toward appellant. Based on all of the above, the court found that appellant's confession was voluntary.

It is well settled that:

"... In reviewing [the ruling of a suppression court] our initial task is to determine whether the factual findings are supported by the record. 'In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted.' *Commonwealth v. Goodwin*, 460 Pa. 516, 522, 333 A.2d 892, 895 (1975). If, when so viewed, the evidence supports the factual findings we are bound by such findings; we may only reverse if the legal conclusions drawn therefrom are in error..."

*Commonwealth v. Johnson*, 467 Pa. 146, 151–52, 354 A.2d 886, 889 (1976). Concededly, the above enumerated findings

of fact are supported by the record. Nonetheless, we are of the view that the suppression court ignored other Commonwealth evidence and uncontradicted defense evidence which would support factual findings compelling the legal conclusion that the confession was, in fact, involuntary.

The Commonwealth's evidence indicates that following the initial one hour interview at the Police Administration Building, appellant was moved to a room on the third floor of the building.[1] That room, used by the Administrative Division of the Crime Lab during the day shift only, was completely deserted at night. Officers testified that the move was necessary to conduct the polygraph examination. According to their testimony, the regular polygraph room in the basement of the building was occupied by appellant's co-defendant, Eugene Corbin. On cross-examination, however, it was discovered that Corbin's examination was completed by 7:50 p. m., approximately forty minutes before appellant even arrived at the Police Administration Building. When asked why the portable polygraph machine could not have been brought to the regular homicide interrogation rooms, Officer James Melley testified, "it wouldn't have been conducive, I don't think." [The laboratory was] "totally empty except for us."

Officer Melley also testified that a polygraph examination usually is completed in approximately twenty minutes. In this case, however, Melley testified that except for the periods when appellant was taken to the bathroom, the pressure cuff indicator, which is similar to the device used to record one's blood pressure, was constantly attached to appellant's arm.

Appellant also testified that the interrogating officers[2] told him if he confessed, he would only be charged as an accessory. This testimony is corroborated to a degree by the

1. The homicide interrogation rooms are on the first floor of the Police Administration Building.

2. The record shows that appellant was interrogated by *at least* three different officers.

testimony of Officer Melley, who was asked if appellant had been told he would be charged with murder and robbery:

"Specific recollection, no. To say to him 'Now we're going to charge you with aggravated robbery, conspiracy, weapons offenses, murder', no, I don't think I presented it to him like that. . . But I *think* he was very well aware that he was going to be charged with some serious crimes, yes."

Melley further testified that appellant was not informed that he was under arrest until after the formal statement had been concluded.

Appellant presented the testimony of five relatives, all of whom came to the Police Administration Building after learning that appellant was in custody. Appellant's uncle, Leon Jackson, a Philadelphia police officer, was one of the first to appear, arriving at 8:30 p. m. He identified himself to the desk officer but was refused permission to speak with appellant. Appellant's mother and aunt did not arrive at the Police Administration Building until shortly before 2:00 a. m., because one of the officers who had been sent to arrest appellant had remained at the house and refused to allow either woman to leave until that time. Upon their arrival, both identified themselves but neither was allowed to see appellant. Finally, appellant's mother was taken into the room where appellant was reading his confession into a tape recorder. This testimony was uncontradicted by the Commonwealth.

 As we stated in *Commonwealth v. Kichline*, 468 Pa. 265, 279, 361 A.2d 282, 289–90 (1976):

"Although there is no single litmus-paper test for determining the voluntariness of a confession, it must be established that the decision to speak was the product of a free and unconstrained choice of its maker. All attending circumstances surrounding the confession must be considered in this determination. These include: the duration and methods of the interrogation; the length of delay between arrest and arraignment; the conditions of detainment; the attitudes of the police toward defendant; de-

fendant's physical and psychological state; and all other conditions present which may serve to drain one's power of resistance to suggestion and to undermine one's self-determination. [citations omitted]"

In *Commonwealth v. Eiland*, 450 Pa. 566, 574, 301 A.2d 651, 654 (1973), this Court ruled that the confession obtained therein was involuntary, stating:

"The record evinces *uncontradicted* evidence that [Eiland], a twenty year old with a tenth grade education was isolated for several periods of time; that upon his initial interrogation he refused to admit involvement in the shooting; that eleven hours later when told by the police he would get more lenient treatment if he confessed, he signed an incriminating statement; and that he was not arraigned until some twenty-five hours after arrest." (Emphasis in original)

We believe the instant case contains sufficient similarities to *Eiland* so that *Eiland* controls this case.

■ In the present case, appellant was eighteen years old at the time of arrest and had no significant history of contact with the police. He was given his *Miranda* warnings only once during the first eight hours he was in custody. During this eight hour period, appellant was interrogated continually except for three short breaks totalling thirty minutes. He consistently denied any involvement in the slaying, even though he was questioned by a number of different officers. For at least five hours of the interrogation, appellant had the pressure cuff indicator of the polygraph machine attached to his body.

The conduct of the police evidences what we believe to be a clear attempt to overbear appellant's free will. The police knew that Corbin, appellant's co-defendant, had confessed and implicated appellant before the interrogation of appellant had been commenced. Nonetheless, the officers never informed appellant that he would be charged with murder, nor did they inform him that he was under arrest and charged with homicide until after he had confessed. In addition, the police interrogated appellant in an isolated part

of the building where the only people present were appellant and his interrogators. Despite the fact that numerous relatives attempted to contact appellant, the police refused any such contact until after appellant had confessed. Finally, appellant was not arraigned until approximately sixteen hours after his arrest.

A combination of all of these factors, based on either the Commonwealth's evidence or the uncontradicted evidence presented by appellant, compels the conclusion that appellant's confession was obtained by the use of impermissible psychological coercion. As such, appellant's statement was involuntary and should have been suppressed. *See Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); *Commonwealth v. Eiland, supra.*

Judgment of sentence reversed and a new trial granted.

KAUFFMAN and WILKINSON, JJ., did not participate in the decision of this case.