477 A.2d 1356

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Steven John ANDERL.**

Superior Court of Pennsylvania.

Submitted Feb. 24, 1983.

Filed May 18, 1984.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellant.

Leonard Sharon, Pittsburgh, for appellee.

Before SPAETH, BROSKY and MONTEMURO, JJ.

MONTEMURO, Judge:

This is a Commonwealth appeal from the order of the Court of Common Pleas of Allegheny County granting in part and denying in part appellee's pre-trial motion to suppress evidence. The appellee, Steven Anderl, was charged with driving under the influence of alcohol or a

74

controlled substance,[1] carrying an unlicensed firearm,[2] possession of a controlled substance [3] (cocaine), possession of a controlled substance [4] (methaqualone), and possession with intent to deliver a controlled substance [5] (methaqualone).

Prior to trial, the appellee filed a motion to suppress statements and physical evidence, including: (1) a valise containing a plastic bag in which were found 892 Methaqualone tablets; (2) a .38 caliber Chartiers Arms revolver; (3) a metal tube in which was found a residence of white powder, found to be cocaine; (4) the results of a breathalyzer test; and (5) statements made by the appellee. The hearing court ordered that the "gun, the contents of the valise and all confession statements, together with the breathalyzer test, be suppressed." We agree that the gun and two of the confession statements were properly suppressed; however, we find the court erroneously suppressed the appellee's initial statement, the contents of the valise and the results of the breathalyzer test. Consequently, with respect to the initial statement made by the appellee, the contents of the satchel and the results of the breathalyzer, we reverse the order of the hearing court.[6]

Initially, we note the standard of review for appeals from suppression orders. An appellate court is bound by the factual findings of the suppression court if they have support in the record. *Commonwealth v. Hall*, 475 Pa. 482, 380 A.2d 1238 (1977); *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976); *Commonwealth v. Iannaccio*,

1. 75 Pa.C.S.A. § 3731(a)(1).

2. 18 Pa.C.S.A. § 6106.

3. 35 P.S. § 780–113(a)(16).

4. *Id.* (2 counts).

5. 35 P.S. § 780–113(a)(30).

6. We have conducted an independent review of the record and conclude that the Commonwealth would be substantially handicapped if forced to proceed to trial without the evidence suppressed. Therefore, we conclude that the Commonwealth has appealed from a final order. *Commonwealth v. Lapia*, 311 Pa.Super. 264, 457 A.2d 877 (1983).

304 Pa.Super. 307, 450 A.2d 694 (1982). However, the suppression court's order may be reversed if the legal conclusions drawn from the factual findings are in error, *Commonwealth v. Jackson,* 497 Pa. 591, 442 A.2d 1098 (1982); *Commonwealth v. Hall, supra.*

The facts relevant to this appeal are as follows. On October 2, 1980, at approximately 2:20 a.m., Officer Timothy Logue received a radio call to proceed to the scene of an accident at 260 McMonagle Road, Greentree Borough. He proceeded to the scene and there encountered a red Cadillac El Dorado in the driveway of a private residence, where it had come to rest after striking a wall adjacent to the driveway. A resident of McMonagle Road, Ronald Ambrosick, who had come out to investigate the crash, pointed out the appellee as the driver of the vehicle. Mr. Ambrosick was the one who had phoned the police and was also the one who found the appellee slumped over the steering wheel.

Officer Logue asked the appellee if he was injured or if he needed an ambulance; to which the appellee replied in the negative. At this time, more police began to arrive from Mt. Lebanon and Scott Township (The scene of the accident was close to the boundary line). Officer Logue then asked the appellee to produce his driver's license, owner's card and No-Fault insurance card. While the appellee was getting the cards out, Mr. Ambrosick told the officer that he [Ambrosick] had seen the appellee remove a dark colored satchel from the trunk of the vehicle and place it behind a hedge nearby. The officer walked over to the spot indicated and observed the satchel. He then asked the appellee if the satchel was his. The appellee answered no. Officer Logue looked into the unzipped satchel and saw an open brown paper bag containing a plastic bag in which there were a number of white tablets. Officer Logue showed the contents to Officer Ronald Dziezgowski of the Scott Township Police who had arrived on the scene in the interim.

At that time, Supervisor Frank Brown of the Mt. Lebanon Police approached the other two officers and informed them

that they believed the appellee to be the perpetrator of a hit and run accident which had occurred nearby in Mt. Lebanon a short time before. The victim in the previous accident had stated that her vehicle was struck by a large red car. Supervisor Brown followed a trail of water or oil to a location close to the second accident scene. Supervisor Brown was informed by the two officers of the contents of the satchel. He inspected the Cadillac and ascertained that there was damage inconsistent with the present accident, yet consistent with the earlier one. Based on his observations, he put the appellee under arrest for driving under the influence and administered *Miranda* warnings.[7] He also took possession of the satchel.

The Cadillac was towed to the Mt. Lebanon police station where an inventory search was conducted by Officer Donald DeMore. The inventory search uncovered a silver tube containing cocaine residue and a .38 caliber revolver. The revolver was found behind the cushion in the back seat. The appellee was asked by Officer McGall if the revolver belonged to him. He replied that it did.

The appellee was also questioned by Officer David DeMore at the Mt. Lebanon police station. Officer DeMore read the appellee the *Miranda* warnings and the appellee indicated that he understood them. Officer DeMore then questioned the appellee concerning the satchel. The appellee initially stated that he knew nothing about it, but when confronted with Mr. Ambrosick's statement, he admitted seeing the case. He stated that he removed it from the vehicle and placed it on the wall so it would not be stolen.

Finally, at some point while the appellee was at the Mt. Lebanon police station, a breathalyzer test was administered to the appellee—who registered a .10% blood alcohol content.

Because of the diverse factual contexts in which each item was seized and the concomitant rules of law applicable to each, we shall address each item separately.

7. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## I. The .38 Caliber Chartiers Arms Revolver

The lower court found that the gun was seized pursuant to a search that exceeded the permissible scope of an inventory.

█ In *Commonwealth v. Brandt,* 244 Pa.Super. 154, 162–163, 366 A.2d 1238, 1242 (1976), our court, in conformity with *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), outlined the range of a proper inventory:

> [T]he Commonwealth must show that the search was in fact an inventory search pursuant to the objectives laid down in *Opperman,* supra, and noted earlier in this opinion. The hearing judge must be convinced that the police intrusion into the automobile was for the purpose of taking an inventory of the car and not for the purpose of gathering incriminating evidence. Those facts and circumstances which the hearing judge must consider include the scope of the search, whether any items of value were in plain view, *State v. Tully,* [166 Conn. 126] 348 A.2d 603 (Conn.1975); the reasons for and nature of the custody, *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); the anticipated length of the custody, and any other facts which the court deems important in its determination. If, after weighing all the facts and circumstances, the court is of the opinion that it was an inventory search of an automobile lawfully in police custody, then any evidence seized as a result of this "reasonable" inventory search is admissible.[7] If, on the other hand, the hearing judge determines that the Commonwealth has not shown that the search was part of the police caretaking function rather than their investigative function, the probable cause-warrant standard must be used for determining reasonableness.

---

[7] The term "reasonable" inventory search like the term "legal" contract is verbose. If the search is, in fact, an inventory search, it must be reasonable. *For example, if while taking inventory of the contents of the car, the police remove seats, rip open the upholstery and find contraband, the evidence must be suppressed—not because the inventory was unreasonable but rather because it is apparent that*

*the police were not conducting an inventory pursuant to the objectives laid down in Opperman, but were searching for incriminating evidence.* (Emphasis added)

The lower court determined that the officer's search behind the back seat cushions clearly exceeded the "police caretaking function" and, similar to the example given in *Commonwealth v. Brandt, supra,* 244 Pa.Super. at 163, n. 7, 366 A.2d at 1242, n. 7, was a search to uncover "incriminating evidence." We agree with that analysis, and hold that the evidence regarding the gun was properly suppressed.

## II. The "Confession Statements"

The hearing court suppressed three statements made by the appellee; to wit: (1) the appellee's reply to Officer Logue's initial inquiry concerning ownership of the satchel; (2) the appellee's replies to Officer DeMore's interrogation at the Mt. Lebanon Police Station; and (3) the appellee's reply to Officer McGall's inquiry about the .38 calibre revolver. The court's rationale for suppressing these statements was that the appellee was so intoxicated that he could not validly consent to a waiver of his *Miranda* rights. *Miranda v. Arizona, supra.* Our own inquiry in reviewing this ruling focuses on the point at which the appellee's *Miranda* rights attached.

 It is axiomatic that *Miranda* warnings must be given to a criminal suspect prior to custodial interrogation. The warnings are procedural safeguards designed to protect a defendant's privilege against self-incrimination. *Commonwealth v. Smith,* 313 Pa.Super. 138, 459 A.2d 777 (1983).

The *Miranda* warnings and concomitant determinations whether a defendant has made a knowing and voluntary waiver of rights are now prerequisites to the admission of a confession only if an individual is "taken into custody or otherwise deprived of his freedom by the authorities in an significant way and is subjected to questioning." (Citation omitted).

*Commonwealth v. Bracey,* 501 Pa. 356, 461 A.2d 775 (1983). The appellee's *Miranda* rights attached at the time he was taken into custody by the police. The test for determining whether a suspect is in custody is "whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. *Commonwealth v. Chacko,* 500 Pa. 571, 577, 459 A.2d 311, 314 (1983); *Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517 (1980); *Commonwealth v. Brown,* 473 Pa. 562, 375 A.2d 1260 (1977).

■ Applying this standard to the present case, we must conclude that the appellee *was not* in custody at the accident scene when he denied ownership of the satchel. We note that Officer Logue had not exercised any form of physical restraint on the appellee when he asked about the satchel. Moreover, we find that Officer Logue's actions from his arrival on the scene to asking about the satchel would not lead a reasonable man to believe that appellee was in custody. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Commonwealth v. Chacko, supra. Cf. Commonwealth v. Horner,* 497 Pa. 565, 442 A.2d 682 (1982). Officer Logue had arrived on the scene only moments before. He asked appellee if he was hurt. The appellee replied, "No." Officer Logue then requested appellee to produce his driver's license, owner's card and insurance card for the purpose of writing up an accident report; and then went to get report forms. It was at this point that Officer Logue learned of the satchel from Mr. Ambrosick, retrieved the satchel and asked appellee if it was his. Any restriction of the appellee's movement was solely the result of the accident and the condition of his vehicle, and not of the actions of the officer.

We find this case to be distinguishable from *Commonwealth v. Meyer, supra.* In *Meyer,* a defendant was in an accident on an interstate highway. A local police officer arrived, and suspecting the defendant to be intoxicated, expressly told him that he would have to wait. A second

patrol car arrived and the defendant waiting in the patrol car until the State Police arrived to investigate the accident. The supreme court held that the police officer's direction to the defendant that he must wait effectively put the defendant into custody.

The instant case presents a much different factual context. Officer Logue had only recently arrived at the accident scene when he asked about the satchel. He had not ordered the appellee to remain at the scene, nor in any other way restricted the appellee's freedom. The officer's request for appellee's driver's license, etc., was for the purpose of completing the accident report. It does not serve as a basis for a finding of custody inasmuch as it is merely part of an on-the-scene investigation by the officer. We hold that the appellant was not in custody at the time that Officer Logue asked about the satchel. Accordingly, there was no requirement that Officer Logue inform the appellee of his *Miranda* rights at that time. As a consequence of this, there was no requirement that appellee waive those rights and the statement made cannot be suppressed on this basis.

With regard to the appellee's later statements, we affirm the hearing court's ruling. At the times relevant to those statements, the appellee was indisputably in custody, *Commonwealth v. Chacko, supra,* and *Miranda* warnings and a valid waiver of rights required prior to admission of statements. *Commonwealth v. Bracey, supra.*

It is the Commonwealth's burden to prove by a preponderance of the evidence that the appellee waived his constitutional rights. *Commonwealth v. Firth,* 479 Pa. 333, 388 A.2d 683 (1978); *Commonwealth v. Culberson,* 467 Pa. 424, 358 A.2d 416 (1976). *See also, Miranda v. Arizona, supra,* 384 U.S. at 475, 86 S.Ct. at 1628; *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The determination as to whether a knowing, voluntary and intelligent waiver was effected is to be made by viewing the totality of the circumstances. *Commonwealth v. Chacko,*

*supra; Commonwealth v. Jackson, supra.* As stated in *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976):

> All attending circumstances surrounding the confession must be considered in this determination. These include: the duration and methods of the interrogation; the length of delay between arrest and arraignment; the condition of detainment; the attitudes of the police toward the defendant; defendant's physical and psychological state; and all other conditions present which may serve to drain one's power of resistance to suggestion or to undermine one's self-determination.

*Id.* 468 Pa. at 279, 361 A.2d at 290.

The hearing court determined that, based on the testimony of the police officers who observed the appellee at the time of his arrest and afterwards, the appellee was so intoxicated that he was unable to give a voluntary and knowing waiver. Officer Logue testified that: "He was, I guess you would call [sic] staggering because if I'm not mistaken I was afraid he was going to take a header. I leaned him against the hood of the Cadillac." (N.T. May 6, 1981, at 30–31). Officer Gremba of the Mt. Lebanon police testified that: "His manner of speech was a bit incoherent and jerky and his eyes were glassy, his face was very red and flushed and his manner of walking, his gait was very— he staggered very much and could not keep his balance." (N.T. May 6, 1981, at 38–39). Supervisor Brown confirmed Officer Gremba's observations: "Odor of alcohol, strong; eyes, glassy; mental condition, stupefied."

The findings of the fact of the hearing court are abundantly supported by the record. Accordingly, we conclude that the appellee's waiver of his *Miranda* rights was vitiated by his intoxication and that the statements made by the appellee while in custody should be suppressed.

### III. The Satchel Contents

The undisputed testimony at the suppression hearing reveals that the appellee removed the satchel from the

trunk of the Cadillac and placed it behind a hedge a few feet from the accident scene. The Commonwealth asserted that the appellee's action constituted an abandonment of the satchel. The hearing court disagreed and found that the appellee "hid" the satchel and, "intended to retrieve it." Thus the court concluded that the appellee continued to maintain a reasonable expectation of privacy in the satchel and its contents.[8]

The supreme court has held that:

The theory of abandonment is predicated upon the clear intent of an individual to relinquish control of the property he possesses.

Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. *United States v. Cowan*, 2d Cir. 1968, 396 F.2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. *United States v. Manning*, 5th Cir.1971, 440 F.2d 1105, 1111. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. *See Abel v. United States supra* [ (1960) 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668]; *United States v. Edwards*, 5th Cir.1971, 441 F.2d 749; *Lurie v. Oberhauser*, 9th Cir.1970, 431 F.2d 330. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *United States v. Edwards, supra*, 441 F.2d at 753; *cf. Katz v. United States*, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973).

8. Although not raised by either party, we note that the appellee had standing to move to suppress the contents of the satchel under the "automatic standing" rule recently reaffirmed by our supreme court in *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457, (1983). *See and* compare, *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

*Commonwealth v. Shoatz,* 469 Pa. 545, 553, 366 A.2d 1216 (1976). *Accord, Commonwealth v. Metzger,* 295 Pa.Super. 267, 441 A.2d 1225 (1981); *Commonwealth v. Williams,* 269 Pa.Super. 544, 410 A.2d 835 (1980). The pertinent question therefore is whether the appellee's action in removing the satchel from the vehicle, secreting it on the property of a third party and thereafter denying ownership of it, constitutes such a relinquishment of interest in the satchel so that appellee may no longer assert a reasonable expectation of privacy in its contents. We hold that it does.

This case invites an interesting comparison to *Commonwealth v. Cubler,* 236 Pa.Super. 614, 346 A.2d 814 (1975). In *Cubler,* a policeman responded to a complaint by a motorist that a small boy had broken his vehicle's windshield. The motorist pointed out the boy, who then ran away. The policeman and motorist followed the boy to a house which proved to be his home. Cubler answered the door and acknowledged that the boy was her son. She then made arrangements to pay for the broken windshield.

As the officer was leaving, a neighbor approached and informed him that "while the officer was approaching the Cubler home, he saw appellant, Ettian, lean out of the back door of the house and toss a black bag into a dog house located at the rear of the house." *Id.* 236 Pa.Super. at 616, 346 A.2d at 815. The officer knew that the Cubler house was under surveillance for suspected drug activity. He went to the rear of the house by means of a common walkway and saw the bag protruding from the dog house. He seized the bag, opened it and found narcotics.

A divided court affirmed the trial court's judgment of sentence. Three judges concluded that the black bag had been abandoned. Judge Hoffman, in dissent, stated his view that abandonment requires "an intent to part with ... control permanently." *Id.* 236 Pa.Super. at 624, 346 A.2d at 819.[9] Judge Spaeth, in a concurring opinion joined by two

---

**9.** We reject the proposition that an intent to permanently disassociate oneself from property is required. Often, contraband is abandoned with a dual purpose—to disassociate oneself from incriminating evi-

judges, stated: "I do not think a person can be said to have abandoned property that is inside a bag and has been placed in a structure on private property." *Id.*, 236 Pa.Super. 619, 346 A.2d at 821.

We refer to *Cubler* only as a polestar for our present decision because only the concurring opinion of Judge Spaeth makes reference to the controlling reasonable expectation of privacy standard. The majority does not discuss nor apply this principle. However, we believe the case is instructive in that a finding of abandonment was made on facts much less persuasive than on those in the present case.

■■■ The appellee's expectation of privacy in the contents of the satchel is measurably decreased by his action of hiding it on the property of an unknown third party. Thus, his expectation of privacy must be much less than that of the defendant in *Cubler* who hid a bag in a structure on his own property. Moreover, after Officer Logue retrieved the satchel, but before he looked inside it, the appellee denied ownership of it. *United States v. Colbert, supra; Accord State v. Burgos,* 185 N.J.Super. 424, 449 A.2d 536 (1982); *Menefee v. State,* 640 P.2d 1381 (Okl.Cr.App.1982); *State v. Fournier,* 448 A.2d 1230 (R.I.1982); *Cf. State v. Wheeler,* 416 So.2d 78 (La.1982); *State v. Freeman,* 64 Ohio St.2d 291, 18 Ohio Op.3rd 472, 414 N.E.2d 1044 (1980), *cert. denied, Freeman v. Ohio,* 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94 (1981); *State v. Brown,* 45 Ohio App.2d 76, 341 N.E.2d 325 (1975); *See generally,* LaFave, *Search and Seizure,* § 2.6(b) (1978); Hall, *Search and Seizure,* § 3.24 *et seq.* (1982). Under these circumstances, we see no basis upon which appellee can claim that he maintained a reasonable expectation of privacy in the contents of the satchel.

### IV. *The Results of the Breathalyzer Test.*

■■■ The hearing court also concluded that the appellee's intoxicated state rendered him incapable of executing

dence, and to possibly recover it later. To have an expectation of privacy in property relinquished under such circumstances is not reasonable. *Cf. United States v. Williams,* 569 F.2d 823 (5th Cir.1978).

valid consent to take a breathalyzer test. The appellee's contention, however, is misconceived since breathalyzer results, like blood samples, are not testimonial evidence, they come under the protection of the fourth, not the fifth amendment. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Commonwealth v. Funk,* 254 Pa.Super. 233, 385 A.2d 995 (1978). Thus, the results of a breathalyzer test are like the fruits of a search or seizure, and are admissible as such. In the present case, the warrantless seizure of the appellant's alcohol-laden breath is valid either as a search incident to arrest, *Commonwealth v. Bundy,* 458 Pa. 240, 328 A.2d 517 (1974), or a search necessitated by exigent circumstances; i.e., the evanescent nature of the alcohol in appellee's bloodstream. In any event, we conclude that the trial court erred in suppressing the result of the breathalyzer test.

The order of the hearing court is reversed with respect to appellee's initial statement, the satchel and its contents, and the results of the breathalyzer; the order is affirmed with respect to the revolver and the remaining "confession statements."

Affirmed in Part and Reversed in Part. Remand to the trial court. Jurisdiction is not retained.