Jimmie DALE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9834.

Court of Appeals of Alaska.

June 12, 2009.

---

Christine S. Schleuss, Law Office of Christine Schleuss, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

COATS, Chief Judge.

Jimmie Dale drove his truck off the road and down a 100–foot embankment, causing serious physical injury to the two passengers in his car. Dale was charged with driving under the influence,[1] driving while his license was suspended,[2] two counts of first-degree assault[3] against the two passengers, two counts of third-degree assault[4] against the same passengers, and failing to remain on the scene and render aid after a motor vehicle accident.[5] Dale moved to suppress the results of a blood test from a blood sample that the police required him to provide at the hospital after the accident. Dale argued that because his blood was taken without his consent and without a search warrant, it was taken in violation of his right to be free from unreasonable searches and seizures under the United States and Alaska Constitutions.[6]

Superior Court Judge Eric Smith denied Dale's motion to suppress. Although Judge Smith concluded that there was enough time for the investigating trooper to call a magistrate and obtain a warrant, he held that exigent circumstances exist as a matter of law when an officer has sufficient probable cause under AS 28.35.031(g) and *State v. Blank*[7] to search for intoxicants in a person's body. We affirm Judge Smith's decision that

1. AS 28.35.030(a).

2. AS 28.15.291(a)(1).

3. AS 11.41.200(a)(1).

4. AS 11.41.220(a)(1)(B).

5. AS 28.35.050(a); AS 28.35.060(a).

6. U.S. Const. amend. IV; Alaska Const. art. I, § 14.

exigent circumstances existed as a matter of law.

*Factual and procedural background*

On October 4, 2005, at approximately 10:45 p.m., Dale drove off the road and down a 100–foot embankment in Palmer. There were two women in the truck with Dale—Lori Osborn and Leah Bradford. Alaska State Trooper Gregory Pealatere and Sergeant Troy Shuey responded to the scene. By the time they arrived, emergency medical personnel were already at the scene. They told Trooper Pealatere that the women in the car had been seriously injured and had stated that Jimmie Dale was the driver of the car and had left on foot. Sergeant Shuey found Dale a short distance away. Dale was swaying as he talked to Sergeant Shuey, his speech was slurred, and he had bloodshot, watery eyes. Sergeant Shuey could smell alcohol on Dale and was "certain that [Dale] had been drinking alcohol at some point during the evening." Dale was taken to the hospital with Osborn and Bradford.

Trooper Pealatere and Sergeant Shuey investigated and documented the scene of the accident. After investigating the scene of the accident, Trooper Pealatere proceeded to the hospital, where he interviewed Bradford at about 1:04 a.m. The trooper estimated that the interview with Bradford lasted about five to ten minutes. At some point in the next half hour, Trooper Pealatere spoke with Sergeant Shuey, and they determined that Dale was intoxicated and was the driver of a vehicle that had been involved in an accident that caused serious physical injury to the passengers, and that they had probable cause to arrest him at that time. Sergeant Shuey instructed Trooper Pealatere to get a blood sample from Dale, by force if necessary. Sergeant Shuey told Trooper Pealatere that

7. 90 P.3d 156 (Alaska 2004) (construing AS 28.35.031(g) to include the three requirements outlined in *Schmerber v. California*, 384 U.S. 757, 770–72, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966): (1) probable cause to search, (2) a recognized exception to the warrant requirement, and (3) reasonable procedures).

a warrant was not necessary because AS 28.35.031(g), the implied-consent statute, authorized the blood draw, so Trooper Pealatere did not attempt to obtain a warrant before instructing the hospital staff to take a blood sample from Dale. The blood sample was taken around 2:00 a.m. The results indicated that Dale had a blood-alcohol level between .07 and .08 when he was tested.

Before trial, Dale moved to suppress the evidence of the blood test, contending that it was taken in violation of his constitutional right to be free from unreasonable searches and seizures. After an evidentiary hearing at which Trooper Pealatere testified, Judge Smith issued an order denying Dale's motion to suppress. Judge Smith found that Trooper Pealatere had enough time to call a magistrate, that he probably could have obtained a search warrant by telephone in about twenty to thirty minutes, and that, had he done so, Dale's blood probably would have been drawn at about the same time. However, Judge Smith found that exigent circumstances existed as a matter of law and the police accordingly did not have to obtain a warrant before having Dale's blood drawn. He therefore denied Dale's motion to suppress the results of the blood test.

A jury convicted Dale of all of the charges. Dale appeals Judge Smith's denial of his motion to suppress. He asks this court to reverse all of his convictions except his conviction for driving while his license was suspended.

*Legal background of the question whether exigent circumstances exist as a matter of law in blood-alcohol cases*

We begin our legal analysis with *Schmerber v. California,*[8] a case decided by the United States Supreme Court in 1966. *Schmerber* upheld the seizure of blood without a warrant under the exigent circumstances exception to the warrant requirement. *Schmerber* has led to two opposing interpretations by various state supreme courts. Some states have concluded that *Schmerber* holds that investigating officers are never required to obtain a warrant when sufficient probable cause exists in suspected drunk-driving cases and the method used to extract the suspect's blood is reasonable.[9] Other states have interpreted *Schmerber* to require a case-specific analysis, taking into consideration the totality of the circumstances in determining whether exigent cir-

8. 384 .U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

9. *See, e.g., People v. Ritchie,* 130 Cal.App.3d 455, 181 Cal.Rptr. 773, 774 (1982) (noting in dicta that the dissipation of blood alcohol evidence over time is a "special factor" that "triggers ... warrantless intrusion into the body"); *State v. Entrekin,* 98 Hawai'i 221, 47 P.3d 336, 348 (2002) (stating that exigent circumstances were "clearly present" because alcohol dissipates from bloodstream); *State v. Woolery,* 116 Idaho 368, 775 P.2d 1210, 1212 (1989) (stating that dissipation of alcohol in blood creates an "inherent exigency which justifies [a] warrantless search"); *DeVaney v. State,* 259 Ind. 483, 288 N.E.2d 732, 735 (1972) (holding that exigent circumstances were present because evidence of blood-alcohol content could "disappear during the time necessary to obtain a warrant"); *State v. Baker,* 502 A.2d 489, 493 (Me.1985) ("The bodily process that eliminates alcohol also provides exigent circumstances obviating the need to obtain a warrant prior to administering a blood test."); *Gregg v. State,* 374 So.2d 1301, 1303 (Miss.1979) (finding that an "emergency situation" existed because of potential for loss of "critical evidence"); *State v. Lerette,* 858 S.W.2d 816, 819 (Mo.App. 1993) (holding that exigent circumstances were created by dissipation of blood-alcohol content in time needed to obtain a warrant); *State v. Ravot-*

*to,* 169 N.J. 227, 777 A.2d 301, 315 (2001) (stating that the dissipating nature of blood-alcohol creates an exigency justifying a warrantless search); *Commonwealth v. Anderl,* 329 Pa.Super. 69, 477 A.2d 1356, 1364 (1984) (upholding warrantless breathalyzer test as valid "either as a search incident to arrest ... or a search necessitated by exigent circumstances; i.e., the evanescent nature of the alcohol in [defendant's] bloodstream"); *State v. Humphreys,* 70 S.W.3d 752, 760–61 (Tenn.Crim.App.2001) ("Based upon the fact that evidence of blood alcohol content begins to diminish shortly after drinking stops, a compulsory breath or blood test, taken with or without the consent of the donor, falls within the exigent circumstances exception to the warrant requirement."); *Aliff v. State,* 627 S.W.2d 166, 170 (Tex.Crim.App.1982) (holding that warrantless blood draw did not violate the defendant's constitutional rights and citing as only exigency the fact that "alcohol in blood is quickly consumed and the evidence would be lost forever"); *State v. Bohling,* 173 Wis.2d 529, 494 N.W.2d 399 (1993) (holding that "the dissipation of alcohol from a person's blood stream constitutes a sufficient exigency to justify a warrantless blood draw").

cumstances exist, before the police can seize a person's blood without a warrant.[10]

In the leading Alaska case on this subject, *State v. Blank,*[11] the Alaska Supreme Court declined to decide which interpretation of *Schmerber* was correct.

### Schmerber v. California

In *Schmerber,* the United States Supreme Court held that a compulsory blood test is a seizure covered by the Fourth Amendment.[12] Schmerber was convicted of DUI after he was involved in a single-car accident and transported to the hospital.[13] At the hospital, Schmerber was arrested and the police ordered a blood test, which revealed that Schmerber had been drinking.[14] After holding that the blood test implicated Schmerber's Fourth Amendment rights, the United States Supreme Court went on to analyze whether the "police were justified in requiring [Schmerber] to submit to the blood test," and "whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness."[15]

Although Schmerber had been placed under arrest before his blood was drawn, the Supreme Court concluded that "the mere fact of a lawful arrest does not end our inquiry."[16] The Court noted that the justifications for searches incident to a lawful arrest had "little applicability with respect to searches involving intrusions beyond the body's surface," and held that "[t]he interests in human dignity and privacy" protected by the Fourth Amendment require a clear indi-

cation that evidence of a crime will be found before such an intrusion can be justified.[17]

The Supreme Court went on to discuss the warrant requirement. Noting that search warrants are normally required for searches of homes, the Court held that "absent an emergency, no less could be required where intrusions into the human body are concerned."[18] The Court noted that the purpose of the warrant requirement—to ensure that the decision to search is made by a neutral magistrate—is "indisputable and great" in the context of intrusions into a person's body.[19]

Nevertheless, the Supreme Court went on to find that the exigent circumstances exception applied in Schmerber's case:

> The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened "the destruction of evidence." ... We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood alcohol content in this case was an appropriate

---

10. *See, e.g., People v. Shepherd,* 906 P.2d 607 (Colo.1995) (holding that exigency exists when "time has elapsed while the driver is transported to the hospital and the investigating officer is detained at the accident scene"); *State v. Johnson,* 744 N.W.2d 340, 344 (Iowa 2008) (holding that blood-alcohol dissipation does not create a per se exigency with respect to the warrant requirement); *State v. Moylett,* 313 Or. 540, 836 P.2d 1329, 1335 (1992) (relying mainly on the Oregon Constitution in declining to hold that blood-alcohol dissipation creates a per se exigency); *Bristol v. Commonwealth,* 272 Va. 568, 636 S.E.2d 460, 464 (2006) (holding that blood alcohol dissipation was not sufficient by itself to create an exigent circumstances exception to Virginia statutory requirement that the driver be arrested within three hours of the offense).

11. 90 P.3d 156.

12. *Schmerber,* 384 U.S. at 767, 86 S.Ct. at 1834.

13. *Id.* at 758 n. 2, 86 S.Ct. at 1829 n. 2.

14. *Id.* at 758–59, 86 S.Ct. at 1829.

15. *Id.* at 768, 86 S.Ct. at 1834.

16. *Id.* at 769, 86 S.Ct. at 1835.

17. *Id.* at 769–70, 86 S.Ct. at 1835.

18. *Id.* at 770, 86 S.Ct. at 1835.

19. *Id.*

incident to petitioner's arrest.[20]

As noted above, this language has led to two interpretations. The first interpretation is that, because "the percentage of alcohol in the blood begins to diminish shortly after drinking stops," this circumstance alone creates an exigency. The other interpretation is that the State must show, under a totality of the circumstances test, that an exigency existed in a specific case. In the second approach, the fact that the percentage of alcohol in the blood is diminishing is merely one factor to consider in determining whether there were exigent circumstances.

### Alaska Authority: Blank v. State

In *State v. Blank*,[21] the Alaska Supreme Court interpreted AS 28.35.031(g), which provides that a person who operates a motor vehicle is considered to have given consent to a chemical test of his breath, blood, and urine if he "is involved in a motor vehicle accident that causes death or serious physical injury to another person." [22]

The supreme court construed AS 28.35.031(g) narrowly in order to avoid constitutional problems.[23] The court held that AS 28.35.031(g) is constitutional "in context of warrantless searches for breath or blood in accident cases involving death or serious physical injury when probable cause to search exists and the search falls within a recognized exception to the warrant requirement," such as the exigent circumstances exception.[24] Thus, the supreme court construed AS 28.35.031(g) to incorporate the requirements outlined in *Schmerber*.

The court declined to decide whether exigent circumstances justified the warrantless breath test in *Blank*.[25] It remanded the case for the superior court to make that determination.[26] While noting that "[m]any courts have implicitly or explicitly held that the dissipation of alcohol always creates sufficient exigency to dispense with the warrant requirement," the court declined to address that question because "no lower court [had] yet reached the issue whether exigent circumstances actually justified [the] search [in this case]." [27]

Justices Matthews and Carpeneti dissented, stating that they would hold that exigent circumstances existed as a matter of law, but only "when, as here, the search in question [was] no more intrusive than a breath test." [28] After citing numerous cases from other jurisdictions, the dissenting justices outlined four reasons for their position: (1) the physiological fact that the body steadily and rapidly eliminates alcohol; (2) the ease of applying such a bright-line rule, as opposed to the difficulty of determining "whether a warrant application might have been prepared and presented to a judge in time for a warrant to have issued and a test conducted before alcohol levels were diminished beyond the limits of reliable testing"; (3) the "categorical approach to body alcohol evidence under an exigent circumstances exception" used by the court in *Anchorage v. Geber*;[29] and (4) the fact that breath searches may be issued without a case-by-case exigency determination in "garden variety drunk driving" cases under AS 28.35.031(a).[30] The dissent also quoted the Court of Appeals for

---

**20.** *Id.* at 770, 86 S.Ct. at 1835–36 (quoting *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964)).

**21.** 90 P.3d 156.

**22.** *Id.* at 161–62. "Serious physical injury" is defined in AS 28.90.990(a)(24) and AS 11.81.900(b)(56) as:

> [P]hysical injury caused by an act performed under circumstances that create a substantial risk of death ... or physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy.

**23.** *Blank*, 90 P.3d at 162.

**24.** *Id.*

**25.** *Id.* at 164.

**26.** *Id.*

**27.** *Id.* at 164.

**28.** *Id.* at 165 (Matthews, J., dissenting).

**29.** 592 P.2d 1187 (Alaska 1979).

**30.** *Blank*, 90 P.3d at 164–67 (Matthews, J., dissenting).

the Fourth Circuit, which noted that "[s]ociety has a recognized interest in protecting its citizens from drunk drivers," and that "[b]reathalyzer tests cause a lesser intrusion than blood tests." [31]

Dale argues that the majority opinion in *Blank* requires a fact-specific analysis of whether exigent circumstances existed in his case. We, however, think another explanation is more likely. Rather than decide a difficult constitutional issue upon which courts were split, the supreme court remanded the case for the trial court to determine whether there were exigent circumstances for obtaining the breath test in Blank's case. If the lower court determined that exigent circumstances existed, there would be no need to decide the constitutional issue.

We also note that the dissent in *Blank*, although advocating the view that exigent circumstances existed as a matter of law, did a balancing test in which it emphasized the minimal intrusion caused by a breath test as opposed to a blood test.

*Why we conclude that there were exigent circumstances here as a matter of law*

In Dale's case, Judge Smith concluded that there was enough time for the investigating trooper to call a magistrate and obtain a warrant before drawing Dale's blood. We therefore find ourselves confronted with the constitutional issue that the supreme court did not have to decide in *Blank*. When a police officer has probable cause to believe that a person was operating a motor vehicle that was involved in an accident that caused death or serious physical injury to another person, and has probable cause to believe that the person was operating the motor vehicle while under the influence of drugs or alcohol, can that officer require the person to provide a sample of his blood? In other words, can an officer constitutionally require a suspect to provide a blood sample under AS 28.35.031(g) without first obtaining a war-

rant or showing case-specific exigent circumstances apart from the fact that blood-alcohol evidence dissipates over time?

We have examined many cases that mention or discuss this issue, but we focus on one recent case, *State v. Shriner*,[32] in answering this question. In that case, the defendant, while highly intoxicated, caused a motor-vehicle accident and was charged under a Minnesota statute that criminalized causing injury to another person by operating a motor vehicle with an alcohol concentration of .08 or more "as measured within two hours of the time of driving" or operating the vehicle negligently while under the influence of alcohol.[33] The Minnesota Supreme Court held that:

> [W]hen [law enforcement] officers have probable cause to believe a defendant [violated the statute], it is important that the defendant's blood be tested within 2 hours of the accident causing injury to or the death of another.... The rapid, natural dissipation of alcohol in the blood creates single-factor exigent circumstances that will justify the police taking a warrantless, nonconsensual blood draw from a defendant.... [34]

In reaching this conclusion, the Minnesota Supreme Court carefully analyzed *Schmerber* and other opinions. The court concluded that its decision was in accord with the view of a majority of the courts that had considered the issue.[35] The court also considered the burden on law enforcement of obtaining a warrant:

> Further, requiring law enforcement to consider other factors places an unreasonable burden on law enforcement. For instance, though the officer may be familiar with the area in which the accident occurred, the officer has no control over how long it would take to travel to a judge or the judge's availability. The officer also may not know the time of the suspect's last drink, the amount of alcohol consumed, or

---

**31.** *Id.* at 167 (quoting *United States v. Reid,* 929 F.2d 990, 994 (4th Cir.1991)).

**32.** 751 N.W.2d 538 (Minn.2008).

**33.** *Id.* at 542 n. 4 (quoting Minn.Stat. § 609.21(1–2b) (2006)).

**34.** *Id.* at 545 (footnotes omitted).

**35.** *Id.* at 547.

the rate at which the suspect will metabolize alcohol. Finally, an officer cannot know how long it will take to obtain the blood sample once the suspect is brought to the hospital. Under a totality of the circumstances test, an officer would be called upon to speculate on each of these considerations and predict how long the most probative evidence of the defendant's blood alcohol level would continue to exist before a blood sample was no longer reliable.[36]

The court also directly addressed the possibility of obtaining a telephonic warrant:

Shriner also contends that police may obtain telephonic warrants quickly and, therefore, the police can easily obtain the relevant evidence they need with a warrant. Put another way, Shriner contends that the use of telephonic warrants makes any exigency disappear because the police will be able to obtain a blood sample well before the evidence is entirely gone. But the officer facing the need for a telephonic warrant cannot be expected to know how much delay will be caused by following the procedures necessary to obtain a warrant. And during the time taken to obtain a telephonic warrant, it is undisputed that the defendant's body is rapidly metabolizing and dissipating the alcohol in the defendant's blood. We do not believe that the possibility of obtaining a telephonic warrant is sufficient to overcome the single-factor exigent circumstances of the rapid dissipation of alcohol in the defendant's blood in this case.[37]

We agree with the reasoning of the Minnesota Supreme Court in *Shriner*.

Dale's case, likewise, is not about a routine arrest for driving under the influence. Alaska Statute 28.35.031(g) only authorizes law enforcement to obtain a blood sample in circumstances that involve a motor-vehicle accident that causes death or serious physical injury. We believe that the Minnesota Supreme Court in *Shriner* made a strong argument for concluding that, when a case involves death or serious physical injury, exigent circumstances exist as a matter of law.

*Conclusion*

We accordingly conclude that Judge Smith correctly ruled that exigent circumstances authorized the police to obtain a nonconsensual, warrantless sample of Dale's blood. Judge Smith did not err in denying Dale's motion to suppress.

The judgment of the superior court is AFFIRMED.

---

**36.** *Id.* at 549 (footnote omitted).

**37.** *Id.* (footnote omitted).