J-S29009-13

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER WELCH, | : | |
| | : | |
| Appellant | : | No. 2185 EDA 2012 |

Appeal from the Judgment of Sentence July 12, 2012,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0001307-2011

BEFORE:  DONOHUE, MUNDY and OLSON, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED MARCH 06, 2015**

Appellant, Christopher Welch ("Welch"), appeals from the judgment of sentence following his convictions of possession with intent to deliver ("PWID"), 35 P.S. §§ 780-113(a)(30), conspiracy to commit PWID, 18 Pa.C.S.A. § 903(c), and persons not to possess firearms, 18 Pa.C.S.A. § 6105.  During the pendency of this appeal, Welch filed a "Motion to Vacate Briefing Schedule and Remand to the Court Below for a Hearing on After-Discovered Evidence" (hereinafter, "Welch's Motion").  In a memorandum decision dated July 19, 2013, we granted Welch's Motion.  On August 26, 2014, however, our Supreme Court vacated this decision in light of its opinion in **Commonwealth v. Castro**, 93 A.2d 818 (Pa. 2014).  On remand, we affirm the trial court's denial of Welch's motion to suppress,

vacate his conviction for persons not to possess firearms, and deny Welch's

Motion for a new trial based on after-discovered evidence.

The trial court summarized the relevant factual background of this

case as follows:

> On July 27, 2009, Narcotics Officer Michael Spicer [("Officer Spicer")] received information from an informant about sales of prescription medications occurring at 2329 Hutchinson Street in Philadelphia by a man named Carmen. After setting up surveillance on July 29th, Officer Spicer observed the a man later identified as Carmen Rossi [("Rossi")] leaving and then returning to that location, a rowhouse, several times, and saw Rossi, while standing in front of that location, receive an unknown amount of United States currency and hand something small to an unknown male individual. Based upon his experience, the officer believed that he had witnessed a narcotics transaction. N.T. 2/2/2012 at 65, 72-74.
>
> Following that transaction, Rossi went back inside 2329 Hutchinson and [Welch] parked nearby and entered that location as well. [Welch], accompanied by a woman who was later identified as a Ms. Celli, was holding a multicolored bag. About ten minutes later, Rossi again had a brief interaction with another male in front of the property, exchanging United States currency for a small object. The officer identified this as a narcotics transaction as well. Twenty minutes after that exchange, at approximately 5:10 p.m., [Welch], Celli, and a Mr. Bowen walked out of the property together.[1] [Welch] and Celli returned to their vehicle and Bowen got into another vehicle. [Welch] drove off, and was followed by Bowen. Officer Spicer notified another police unit that he was going to follow the vehicles. **Id.** at 73-79.

Officer Spicer followed [Welch] and Mr. Bowen, who was following [Welch] in a separate vehicle, as they drove to the neighborhood of Philadelphia known as Fishtown. When [Welch] parked his vehicle near the intersection of York Street and Cedar Street, [Officer Spicer] observed him point to Bowen, who was in his car, and signal for him by a circular hand motion to drive around the block, which Bowen did. Then, Bowen returned to the corner of York and Cedar Streets, parked his vehicle, and walked to the trunk and opened it. Officer Spicer then observed that Bowen had a holstered handgun under his jacket. Upon seeing the gun, Officer Spicer notified the other units involved that he would be apprehending Bowen and that [Welch] should also be apprehended for investigation. *Id.* at 77-83.

The officers that were working with Officer Spicer approached [Welch], who ran from them. During his apprehension, [Welch] ran into an apartment building where he dropped the multicolored bag he had been carrying. Inside the bag, police found 76 Methadose pills, 46 Suboxone pills, another bottle of 60 Suboxone pills, and two bottles of Oxycodone pills containing 50 and 37 pills. [Welch] himself was carrying $310 in United States currency, keys to an apartment in that building, and a cell phone. During this time, Sergeant Seaman and Officers Perrotti and Speiser had taken over surveillance of 2329 Hutchinson. *Id.* at 83-86.

After receiving warrants for [Welch's] apartment and for 2329 Hutchinson, the police conducted searches of both locations that evening. At 2329 Hutchinson, they arrested Rossi and found on his person $4,307 in United States currency and a bottle containing 84 Percocet pills. In the basement, they found a safe containing a .9mm Taurus handgun loaded with seventeen rounds, a pill bottle containing 53 Percocet pills prescribed to Mary Bowen, and a life insurance policy in Rossi's name. In the kitchen, police recovered a zip-lock bag containing 145 Oxycontin pills and a bottle containing 93

Hydrocodone pills. From a second-floor bedroom, they recovered 121 Vicodin pills, a zip-lock bag with 195 Percocet pills, and another bottle of Percocet containing 100 pills. Police also found mail addressed to Rossi and a pocketbook on the first floor with $765 in United States currency. *Id.* at 86-90[.]

At 2401 East York, [Welch's] apartment, at approximately 9:45 p.m., police found two fifty-gallon trash bags; the first contained a large number of non-narcotic pills. The second contained 18 bottles containing 2,041 Percocet pills, eight bottles containing 1,205 Vicodin pills, three bottles containing 219 Oxycontin pills, one bottle containing 240 Tylenol Four pills, fourteen bottles containing 1,309 Methadose pills, 4 bottles containing 2,143 Xanax pills, five bottles containing 255 Adderall pills, one bottle containing 80 Ritalin pills, [two] bottles containing 153 Dextroamphetamine pills, one bottle containing 100 Codeine, three bottles containing 122 Hydromorphine pills, 12 bottles containing 756 Morphine pills, three bottles containing 250 Clonidin pills, two bottles containing 160 Metadate pills, two bottles containing 152 Methylphentadine or Methylphentadate pills, eleven boxes of Fentanyl patches, two boxes of Daytrana, two pint bottles of Hydrocodone liquid, one bottle of Methadone liquid, one pint bottle of Roxicet liquid, and one fluid ounce of Morphine Sulfate. A safe contained $2,480 in United States currency; the apartment also contained paperwork and mail in [Welch's] name. *Id.* at 90-93.

By party stipulation, the Commonwealth submitted a police firearms identification report that confirmed that the gun that Bowen carried was an operable Glock .40 caliber handgun. N.T. 2/3/2012, pp. 71-72.

_____

> [1] For his role in these events, Mr. Robert Bowen entered a guilty plea to PWID and Conspiracy at CP-51-CR-0001303-2011.

Trial Court Opinion, 9/21/2012, at 2-4.

On February 1, 2012, Welch filed a motion to suppress evidence. At the suppression hearing, the Commonwealth presented the testimony of Officer Spicer, Officer Brian Reynolds ("Officer Reynolds"), and Officer Jeffrey Walker ("Officer Walker").[1] On February 2, 2012, the trial court denied Welch's suppression motion.

On February 3, 2012, Welch waived his right to a trial by jury and stipulated to the introduction of all relevant, non-hearsay testimony introduced at the suppression hearing. N.T., 2/3/2012, at 69. Welch also stipulated that he did not have a valid license to carry a firearm and that he had been convicted of a prior offense that prohibits him from lawfully possessing, owning or carrying a handgun. *Id.* at 72. Against the advice of counsel, Welch testified on his own behalf, during which he emphasized, inter alia, that he "never acted with [] Rossi[,]" and that he did not possess or touch a gun. *Id.* at 73-74, 76, 80.

---

[1] Officer Spicer testified as to his observations beginning with the surveillance of 2329 Hutchinson Street and 2401 East York Street through his search of 2329 Hutchinson Street and 2401 East York Street. *See* N.T., 2/2/2012, at 64-175. Officer Reynolds testified as to the contents and recovery of Welch's bag at 2401 East York Street. *See id.* at 178-181. Officer Walker testified regarding his involvement in the apprehension and arrest of Welch. *See id.* at 181-202.

The trial court convicted Welch of the three above-referenced crimes and subsequently sentenced him to concurrent terms of six to twelve years of imprisonment for the PWID and conspiracy to commit PWID convictions. The trial court imposed no further penalty for the persons not to possess firearms conviction. The trial court later denied Welch's motion for reconsideration of sentence.

On appeal, Welch raised two issues for our consideration and determination:

> I. Is [Welch] entitled to a new trial as the result of [c]ourt error where the [c]ourt failed and refused to grant [Welch's] [m]otion to [s]uppress certain physical evidence seized, including drugs, money, keys and other contraband, and all where the Commonwealth undertook a search and seizure without probable cause; without reasonable suspicion; without consent; and without any exception to the warrant requirement; and where the actions of the Commonwealth law enforcement officers were the proximate cause of a forced abandonment of a bag by [Welch] which contained drugs?
>
> II. Is [Welch] entitled to an arrest of judgment on the charge of VUFA, Section 6105, where [Welch] was convicted of said section but where [Welch] did not possess a weapon, either personally or constructively, and where [Welch] was convicted based on the possession of a weapon by a third party, and where [Welch] cannot be held legally responsible for said possession?

Appellant's Brief at 3.

- 6 -

After the Supreme Court remanded the case to this Court for reconsideration in light of its decision in **Castro**, we ordered the parties to file supplemental briefs on the issue of whether Welch's Motion contains sufficient detail regarding proposed evidence and witnesses to comply with the standards set forth in **Castro**. Having received supplemental briefs, we will proceed to address the two issues Welch raises on direct appeal and reconsider Welch's Motion regarding after-discovered evidence.

For his first issue on appeal, Welch argues that the trial court erred in denying his motion to suppress evidence. In particular, Welch contends that pursuant to **Commonwealth v. Matos**, 672 A.2d 769 (Pa. 1996), the illegal conduct of law enforcement officers here, in seizing him as a result of an unlawful pursuit without probable cause to do so, resulted in a forced abandonment of the multicolored bag he had been carrying that contained drugs.

Our standard of review in addressing a challenge to a trial court's denial of a suppression "is limited to determining whether the factual findings are supported by the [suppression] record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Garibay**, 2014 WL 6910879, at *7 (Pa. Super. Dec. 9, 2014) (quoting **Commonwealth v. Kearney**, 92 A.3d 51, 65 (Pa. Super. 2014)). In so doing, "we look at all of the evidence in the light most favorable to the Commonwealth and determine whether the [suppression] record supports

the suppression court's findings of fact." *Id.* (quoting *Commonwealth v. Reppert*, 814 A.2d 1196, 1208 (Pa. Super. 2002) (en banc)); *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010).

A criminal defendant has no standing to contest the search and seizure of items he has voluntarily abandoned.[2] *See, e.g.*, *Commonwealth v. Byrd*, 987 A.2d 786, 790 (Pa. Super. 2009) (citing *Commonwealth v. Tillman*, 621 A.2d 148, 150 (Pa. Super. 1993)). Pursuant to the doctrine of "forced abandonment," however, when contraband is discarded by a person fleeing from a police officer who possesses neither probable cause to arrest nor reasonable suspicion to conduct a *Terry*[3] stop, the contraband is the fruit of an illegal seizure. *Matos*, 672 A.2d at 770. In *Matos*, our Supreme Court recognized that a "forced abandonment" violates the criminal defendant's rights under Article I, Section 8 of the Pennsylvania Constitution, even though the United States Supreme Court has refused to recognize the doctrine under the Fourth Amendment to the United States Constitution. *Id.*

---

[2] In his appellate brief, Welch argues that the Commonwealth failed to prove that he abandoned the multicolored bag, as the evidence is consistent with a finding that he merely left the bag on the steps where it was subsequently retrieved by the police officers. Welch's Brief at 10-12 (citing *Commonwealth v. Williams*, 551 A.2d 313 (Pa. Super. 1988)). We must agree with the Commonwealth, however, that during the suppression hearing counsel for Welch waived this claim, as he repeatedly conceded abandonment as part of his argument in support of "forced abandonment" under *Matos*. Because the claim was waived in the trial court, it may not be asserted now on appeal. Pa.R.A.P. 302(a).

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

(citing *California v. Hodari D.*, 499 U.S. 621 (1991)); *Commonwealth v. Jones*, 978 A.2d 1000, 1005 n.6 (Pa. Super. 2009).

In this case, Welch contends that the contents of the multicolored bag should have been suppressed because of a forced abandonment. Welch argues that upon arriving at his residence, plain clothes police officers "without any particular reason … physically rushed at [him] in an intimidating fashion" and chased him into his apartment, during which time he dropped his bag. Welch's Brief at 10. According to Welch, "two very large men were charging at him, and if they were not police, [he] certainly would have had to fear for his safety, and if they were police, a reasonable individual would have understood that the police were charging at him with no probable cause or any other reason to have stopped him." *Id.* at 11.

Based upon our standard of review, however, we cannot proceed based on Welch's description of events. Here, trial court concluded, based upon the evidence presented at the suppression hearing, that Welch began to run "as soon as he saw Officer Spicer exit his vehicle" and that "the police did not commit any unusual show of force sufficient to provoke flight." Trial Court Opinion, 9/21/2012, at 6. Instead, the trial court concluded that the police "merely exited a police car and looked at [Welch] who then began running." *Id.* The evidence at the suppression hearing supports these factual findings, as Officer Walker testified that Welch looked in his direction

and began to run as soon as he got out of the car. N.T., 2/2/2012, at 194, 197.

Welch's unprovoked flight does not, however, by itself establish reasonable suspicion or probable cause for the police officer's decision to chase Welch into his apartment. Instead, unprovoked flight is sufficient to establish reasonable suspicion only in high crime areas.[4] *See, e.g.*, *In the Interest of D.M.*, 781 A.2d 1161, 1165 (Pa. 2001); *Commonwealth v. Brown*, 904 A.2d 925, 930 (Pa. Super. 2006). There was no testimony at the suppression hearing that the events at issue here occurred in a high crime area.

In this case, we conclude that other factors, in combination with Welch's unprovoked flight, establish reasonable suspicion. Most importantly, the police officers had just observed Welch enter and then exit from a house (Rossi's), from which Officer Spicer testified that he observed hand-to-hand

---

[4] Welch contends that because Officer Spicer testified that he advised the other officers to arrest Welch, probable cause was required for the seizure. In *Matos*, however, our Supreme Court indicated that either probable cause or reasonable suspicion is sufficient to justify a seizure under the "forced abandonment" doctrine. *Matos*, 672 A.2d at 770. Moreover, as the Commonwealth correctly notes, this Court has held that an officer's intentions when effectuating a seizure are irrelevant when evaluating the constitutionality of his or her actions. *See, e.g.*, *Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa. Super. 2009) (en banc) ("Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken.") (citation omitted), *appeal denied*, 990 A.2d 727 (Pa. 2010).

drug transactions occurring on the street.  After leaving Rossi's house, Welch then went to another part of the city accompanied by Bowen, who Officer Spicer observed carrying a holstered gun under his jacket.  These additional facts, along with Welch's unprovoked flight, were sufficient to establish reasonable suspicion for the seizure of Welch (i.e., the chase into his apartment).  The multicolored bag Welch dropped on the stairs of the apartment building was thus not the product of a forced abandonment and the trial court did not err in denying Welch's motion to suppress.

For his second issue on appeal, Welch contends that the Commonwealth's evidence was insufficient to support his conviction of persons not to possess firearms.  Welch's Brief at 16.  Our standard of review for a sufficiency of the evidence claim is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder

> unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Stokes,*** 38 A.3d 846, 853 (Pa. Super. 2011) (citation omitted).

Section 6105 of the Pennsylvania Crimes Code provides that persons convicted of certain listed offenses "shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S.A. § 6105(a)(1). The possession of a firearm may be constructive. ***See Commonwealth v. Harvard,*** 64 A.3d 690, 699-700 (Pa. Super. 2013). To prove constructive possession the Commonwealth must show that the "defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control." ***Id.*** at 699 (quoting ***Commonwealth v. Gutierrez,*** 969 A.2d 584, 590 (Pa. Super. 2009)).

On appeal, Welch argues that the Commonwealth did not meet its burden to prove that he possessed the gun on Bowen's person, contending that "[t]he mere fact that a co-defendant possessed a gun, even if that co-defendant was a co-conspirator, does not mean that the gun was possessed by all of the conspirators." Welch's Brief at 17-18. The trial court disagreed, finding that:

> The facts establish that [Welch], Bowen, and Rossi were engaged in a conspiracy to sell large amounts of narcotics, and in fact all three have been

- 12 -

convicted of conspiracy to do just that. The facts further establish that [Welch] directed Bowen's behavior during a time when Bowen was wearing a handgun. Bowen followed [Welch] in his car, and then, upon being directed to circle [Welch's] block, Bowen followed [Welch's] directive and did just that. In directing Bowen's behavior, [Welch] demonstrated that he had the power and the intent to control an armed man in order to further the goals of their narcotics conspiracy. To control the man is to control the gun.

* * *

[A]lthough the handgun in question was recovered from Bowen's person, because [Welch] directed Bowen's behavior in the furtherance of their narcotics operation, effectively ordering Bowen to drive around the block for security purposes during a time when [Welch] was carrying a large amount of drugs and was therefore vulnerable, the gun can be attributed to [Welch] under a theory of joint constructive possession. Therefore, the evidence is sufficient to establish the elements of a 6105 violation in this matter.

Trial Court Opinion, 9/21/2012, at 8-9.

In reaching this conclusion, the trial court relied on *Commonwealth v. Bricker,* 882 A.2d 1008, 1016-17 (Pa. Super. 2005). In *Bricker*, the jury convicted the appellant of, inter alia, possession of a controlled substance (crack cocaine), PWID, and conspiracy. *Id.* at 1013. This Court found that the appellant had joint constructive possession of crack cocaine thrown on the floor of the residence by a co-conspirator because "it was reasonable for the jury to infer that [a]ppellant and [his co-conspirator] had joint constructive possession of the crack cocaine because [a]ppellant was

selling crack cocaine for [his co-conspirator] out of [a]ppellant's residence."

*Id.* at 1016-17.

*Bricker* has no application on the facts presented in this case. Here, Welch and Bowen were on the street near their respective vehicles. In *Bricker*, by contrast, the appellant and his co-conspirator were together in a residence, from which the appellant sold the drugs for his co-conspirator. Welch signaling Bowen to drive around the block before Bowen parked his vehicle does not give rise to any reasonable inference that Welch controlled the gun on Bowen's person.

The Commonwealth argues that it had no burden to prove constructive possession of Bowen's gun because the trial court convicted Welch of conspiracy to commit PWID. Commonwealth's Brief at 13. In support of this argument, the Commonwealth directs us to *Commonwealth v. Perez,* 931 A.2d 703 (Pa. Super. 2007). In *Perez*, this Court held that "[b]ecause the Commonwealth proved conspiracy, it did not have to prove Appellant's constructive possession of the drugs found in [the co-conspirator's] home. As a result of the conspiracy, the drugs in the home were fully attributable to Appellant as well as [the co-conspirator]." *Id.* at 709 (citing *Commonwealth v. Holt,* 711 A.2d 1011 (Pa. Super. 1998)).

In our view, *Perez* is inapposite because here (unlike in *Perez*) possession of a firearm was not the crime underlying the conspiracy. Instead, in both this case and in *Perez*, PWID was the object of this

conspiracy. Thus, the reasoning in **Perez** (that the Commonwealth did not have to prove constructive possession **of the drugs** in a conspiracy to commit PWID) is inapplicable in the present instance, where possession of **a gun** (rather than the drugs) during a conspiracy to commit PWID is at issue.

In imputing possession of the firearm to Welch, the Commonwealth also relies on general rules of conspiratorial liability, which this Court has summarized as follows:

> Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.
>
> > The general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. ***All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy*** regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action.
>
> The premise of the rule is that the conspirators have formed together for an unlawful purpose, and thus, they share the intent to commit any acts undertaken in order to achieve that purpose, regardless of whether they actually intended any distinct act undertaken in furtherance of the object of the

> conspiracy. It is the existence of shared criminal intent that 'is the sine qua non of a conspiracy.'

**Commonwealth v. Lambert,** 795 A.2d 1010, 1016-17 (Pa. Super. 2002) (citations omitted) (emphasis added), *appeal denied*, 569 Pa. 701, 805 A.2d 521 (2002). Thus, possession of a firearm can be imputed to a co-conspirator if the firearm is used in furtherance of the object of the conspiracy. **See Commonwealth v. Galindes,** 786 A.2d 1004, 1011 (Pa. Super. 2001), *appeal denied*, 569 Pa. 691, 803 A.2d 733 (2002) (affirming possessory firearms convictions because Galindes engaged in a conspiracy to commit burglary and a firearm was used by a member of the conspiracy to aid in their escape). Because there is no evidence that the firearm on Bowen's person was used in furtherance of the conspiracy to commit PWID, we cannot conclude that possession of the firearm can be attributed to Welch.

For similar reasons, possession of the firearm cannot be imputed to Welch by virtue of accomplice liability. In **Commonwealth. v. Knox,** 2014 WL 7090082 (Pa. December 15, 2014), our Supreme Court held that accomplice liability is offense specific. **Id.** at *1. Accordingly, an accomplice to a broader criminal undertaking may be criminally responsible for the possession of a firearm by another accomplice to the undertaking when "the evidence and reasonable inferences, taken in the light most favorable to the Commonwealth as the verdict winner, supported a conclusion that [the

appellant], acting with the intent to promote or facilitate [his accomplice's] unlicensed carrying of a concealed firearm, solicited [his accomplice] to commit such offense or aided, agreed, or attempted to aid [his accomplice] in doing so. *Id.* at *2.

Conducting the analysis as directed by our Supreme Court, we conclude that the Commonwealth did not introduce any evidence to support a finding that Welch acted with the intent to promote or facilitate either Bowen's possession of firearms. We likewise conclude that the certified record contains no evidence that Welch promoted, aided, agreed, or attempted to aid Bowen's possession of firearms. Instead, the evidence shows only that Welch was present at locations where Bowen possessed a firearm. The trial court referred to evidence that Welch directed Bowen to circle the block before parking his car, but this does not, even when taken in the light most favorable to the verdict winner, satisfy the Commonwealth's burden of proof on this issue.

Finally, we consider Welch's Motion to remand the case to the trial court for an evidentiary hearing for a new trial based upon after-discovered evidence. Specifically, Welch points to correspondence from the Philadelphia District Attorney (R. Seth Williams) to the Philadelphia Police Commissioner (Charles Ramsay), stating that he will no longer use six police officers (including Officer Spicer) as witnesses in narcotics cases and will not accept for charging any narcotics cases when either of these six police officers

would be necessary witnesses. Also attached to Welch's Motion was an affidavit filed by Edward McCann, the First Assistant District Attorney of Philadelphia, in another case involving narcotics charges, in which McCann sought to quash a subpoena for internal documents relating to investigations of the six officers (on the grounds that investigations were ongoing). Finally Welch attached a series of newspaper articles, beginning on December 5, 2012, from *The Philadelphia Inquirer,* discussing the transfer of these six police officers from narcotics duties to lower-profile units, which transfers were necessary because these officers had been the targets of numerous complaints to Internal Affairs as well as federal lawsuits involving claims of false arrests, filing fraudulent reports, and the use of excessive force.

In his supplemental brief, Welch has also attached a 42-page federal indictment against the six officers filed in the United States District Court for the Eastern District of Pennsylvania on July 29, 2014. This indictment charges Officer Spicer and the other officers with multiple counts of, inter alia, robbery, extortion, possession with the intent to distribute cocaine, falsification of records, and violations of the federal RICO statute (18 U.S.C. § 1962). Among other allegations, the indictment identifies multiple occasions where the officers stole from persons accused of drug offenses and filed false reports to conceal their criminal conduct.

Pennsylvania Rule of Criminal Procedure 720(C) provides that "[a] post-sentence motion for a new trial on the ground of after-discovered

evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C).  The comment to this rule indicates that "after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge[.]"  *Id.* Comment.  Whether a petitioner is entitled to a new trial must be made by the trial court at an evidentiary hearing."  *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010).  At the evidentiary hearing, it is the petitioner's burden to prove, by a preponderance of the evidence, that the evidence (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.  *See, e.g.*, *Commonwealth v. Pagan,* 950 A.2d 270, 292 (Pa. 2008).  The trial court must make these determinations on a fully developed evidentiary record. *Id.*

In *Castro*, our Supreme Court addressed whether a petitioner may "meet the test for after-discovered evidence where [he] proffers no evidence, but instead relies on a newspaper article."  *Castro*, 93 A.3d at 824.  Concluding that a newspaper article is not evidence but is rather "a collection of allegations that suggest such evidence may exist," *id.* at 925,

the Supreme Court offered the following guidance in connection with this Court's consideration of a Rule 720 motion:

> We decline to impose a strict requirement that the proponent of a Rule 720 motion attach affidavits or other offers of proof; the rule does not contain express language requiring this, in contrast to the rules pertaining to PCRA petitions. However, we hold a motion must, at the very least, describe the evidence that will be presented at the hearing. Simply relying on conclusory accusations made by another, without more, is insufficient to warrant a hearing. … Absent identification of the actual testimony, physical evidence, documentation, or other type of evidence to support the allegations of [the officer's] wrongdoing, we cannot conclude appellee had evidence to offer; to conclude otherwise would be speculation.

*Id.* at 827.

In his supplemental appellate brief, Welch argues that he has satisfied his pleading burden under *Castro* because the exhibits he has attached show "**exactly** what evidence he would present" at the evidentiary hearing. Welch's Supplemental Brief at 5 (emphasis in original). Welch contends that he "stands in far different shoes than Castro," because he does not rely merely on newspaper articles, but rather on documents that reflect that the district attorney's office and other law enforcement agencies have been actively investigating significant wrongdoing by Officer Spicer. *Id.* at 7. Finally, Welch claims that the lengthy federal indictment identifies precisely what evidence he would present in support of his motion for a new trial. *Id.*

In contrast, in its supplemental appellate brief, the Commonwealth argues that the federal indictment, while more formal and credible than a newspaper article, suffers from precisely the same shortcomings – namely that it contains only unproven allegations of wrongdoing and is not an offer of proof. Commonwealth's Supplemental Brief at 4, 8. The Commonwealth contends that Welch still has not identified any specific witnesses or any producible, admissible evidence. *Id.* With respect to the correspondence by R. Seth Williams and the affidavit by Edward McCann, the Commonwealth claims that neither points to any admissible evidence nor reveals that the Commonwealth has any admissible evidence in its possession. *Id.* at 11. As such, the Commonwealth concludes that Welch has not met his burden under *Castro* to obtain an evidentiary hearing. *Id.* at 12.

We need not decide whether Welch's Motion complies with the newly announced *Castro* requirements, since upon review of the entirety of the information provided (including the supplemental briefs and the federal indictment), we conclude that all of the evidence at issue here, even if producible and admissible at an evidentiary hearing, would go solely to Officer Spicer's credibility. None of the evidence Welch has identified points towards his innocence or has any direct bearing on Officer Spicer's actions in this case. In other words, all of the evidence referenced herein strongly suggests that Officer Spicer is guilty of multiple instances of criminal misconduct **in other drug cases**, but none of the evidence details any such

wrongdoing **in this case**. Accordingly, in this case this evidence could be used only for impeachment purposes to attack the credibility of Officer Spicer's testimony.[5] Because after-discovered evidence to be used solely to impeach the credibility of a witness does not constitute grounds for a new trial, **Pagan,** 950 A.2d at 292, Welch's Motion must be denied.

In his thoughtful dissenting opinion in **Commonwealth v Choice**, 630 A.2d 1005 (Pa. Super. 2003), Judge Klein offered a strong argument that in appropriate cases impeachment evidence should constitute grounds for a new trial:

> Understandably, the majority relies on that statement repeated so often it has become an adage that, "the evidence will not be used solely for the purposes of impeachment."
>
> This is proof of the reality of the legal maxim, "*communis error facit jus*," or "common error, repeated many times, makes law."
>
> I believe that what we have called a four-prong test is really only a three prong-test. Prong # 3, the "only for impeachment" prong, is just an extension of Prong # 4, that the new evidence would not affect the outcome. Normally, evidence that just would tend to impeach what a witness said would not change the outcome at a new trial.

---

[5] In Welch's Motion, he argues that the evidence could also be used to file a motion to suppress or to file a request for exculpatory material under **Brady v. Maryland**, 373 U.S. 83 (1963). Welch's Motion ¶ 16. At a suppression hearing, however, the evidence would be used for the same purpose as at trial (to attack Officer Spicer's credibility). Similarly, Welch has not identified any potential **Brady** material that could (if available) be used for any non-credibility related purpose.

> A bald statement that evidence that only impeaches would never justify a new trial defies common sense and justice. Assume, for example, that a defendant is convicted of a robbery when the victim cannot make an identification, and the sole identification is made by a citizen who comes forth later to report that he witnessed the robbery and saw the defendant, whom he recognized. The witness identifies the defendant at trial. Suppose later it is discovered that this witness was an enemy of the defendant and in fact was a prisoner in an out-of-state jail at the time the robbery took place. Under the language of the rule as has been enunciated, this testimony about the witnesses' jailing, proving that it was impossible for him to see what he said he saw, would not be enough to allow a new trial, absent some other prong being met. Since testimony about the incarceration would "be used solely for the purposes of impeachment," this information would not be considered newly discovered evidence that justifies a new trial.

> If one examines the cases that quote the so-called four-prong test, one can see that there is **no** case where the only grounds disqualifying the evidence from being considered after-discovered to warrant relief is the fact that it only impeaches. Actually, Prong # 3 is almost always cited in addition to Prong # 4, which denies a new trial where the evidence is not of such a nature and character that a different outcome is likely. However, a common sense approach is that in **some** cases, impeachment evidence **is** likely to change the result.

*Id.* at 1009-10 (Klein, J., dissenting) (footnote omitted; emphasis in original).

This constitutes one such case where impeachment evidence would likely change the result at a new trial. Officer Spicer was the Commonwealth's key witness, both at the suppression hearing and at trial.

- 23 -

It was Officer Spicer who conducted the surveillance of Rossi's residence at 2329 Hutchinson Street and allegedly observed drug sales outside this residence. Officer Spicer further testified that he allegedly observed Welch enter and leave 2329 Hutchinson Street with a multicolored bag, directed the other officers to follow Welch and Bowen to Welch's apartment, and saw Bowen's holstered gun. Finally, it was Officer Spicer who testified he directed the other officers to seize Welch, which seizure resulted in the recovery of the multicolored bag and the drugs found inside Welch's apartment. In short, Officer Spicer's testimony was critical to the Commonwealth's case against Welch. With a fertile basis to attack (destroy) Officer Spicer's credibility, a different outcome would likely have been the result if Welch's counsel had the benefit of the now-discussed impeachment evidence.

This Court is not at liberty to adopt Judge Klein's reasoning. In **Castro**, our Supreme Court reaffirmed the four-part test for a new trial based on after-discovered evidence under Rule 720 – which test continues to include the prohibition against impeachment evidence. **Castro**, 93 A.3d at 825. We note that in **Castro**, the appellant argued that where the evidence in question would "completely destroy and obliterate the testimony of the one witness upon whose testimony the defendant was convicted," the evidence "goes to the ultimate question in the trial" and should be grounds for a new trial. **Id.** The Supreme Court merely noted that "the test for

whether a new trial is warranted is settled," cited to prior decisions referencing the four-part test (all of which post-date Judge Klein's dissent in *Choice*),[6] and moved on to a discussion of the above-mentioned evidentiary issues. *Id.*

For the foregoing reasons, we vacate the July 12, 2012 judgment of sentence for Welch's conviction for persons not to possess firearms, 18 Pa.C.S.A. § 6105. Because the trial court imposed no penalty for this conviction, our decision does not alter the trial court's sentencing scheme and thus remand is unnecessary. In all other respects, we affirm the July 12, 2012 judgment of sentence. Welch's Motion for remand for an evidentiary hearing based upon after-discovered evidence is denied. Jurisdiction relinquished.

Mundy, J. and Olson, J. concur in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/6/2015

---

[6] *Commonwealth v. Montalvo*, 604 386, 986 A.2d 84, 109 (Pa. 2009); *Pagan*, 950 A.2d at 292; *Commonwealth v. Randolph*, 582 Pa. 576, 873 A.2d 1277, 1283 (2005).