551 A.2d 313

**COMMONWEALTH of Pennsylvania**

v.

**Robert WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted July 11, 1988.

Filed Dec. 14, 1988.

Elaine Demasse, Assistant Public Defender, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before TAMILIA, MONTGOMERY and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment of sentence for receiving stolen property. Appellant contends that the suppression court erred in denying his motion to suppress physical evidence. We agree and, accordingly, vacate the judgment of sentence and remand for a new trial.

Appellant was arrested and charged with burglary, theft, receiving stolen property, and criminal and defiant trespass. Prior to trial, appellant moved to suppress a video cassette

recorder ("VCR") and tapes that he had placed on a bench in a bar, and that had been seized by a police officer. The motion was denied, and appellant proceeded to trial before a judge sitting without a jury. On December 28, 1987, appellant was found guilty of receiving stolen property, and was acquitted on the remaining charges. Post-verdict motions were timely filed and denied, and appellant was later sentenced to a two-year term of probation. This timely appeal followed.

The scope of our review of the denial of a motion to suppress is well-established.

An appellate court is bound by the factual findings of the suppression court if they have support in the record. *Commonwealth v. Hall*, 475 Pa. 482, 380 A.2d 1238 (1977); *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976); *Commonwealth v. Iannaccio*, 304 Pa. Super. 307, 450 A.2d 694 (1982). However, the suppression court's order may be reversed if the legal conclusions drawn from the factual findings are in error, *Commonwealth v. Jackson*, 497 Pa. 591, 442 A.2d 1098 (1982); *Commonwealth v. Hall, supra.*

*Commonwealth v. Anderl*, 329 Pa.Super. 69, 74-75, 477 A.2d 1356, 1358-59 (1984).

At the conclusion of the suppression hearing below, the court made the following findings of fact:

First, ... Officer Mock testified that on April 17, 1987, approximately 10:00 p.m. he was on routine patrol in his patrol car travel[l]ing northbound on Baynton Street at or about the intersection with Chelten Avenue.

Secondly, that Officer Mock observed [appellant] walking southbound on Baynton Street carrying a green trash bag containing what appeared to be a VCR.

Third, that Officer Mock observed [appellant] enter a bar located on the corner of Baynton and Chelten Avenue.

Fourth, that Officer Mock entered the bar and found the trash bag, VCR, and eight video tapes located on a bench. He did not observe [appellant] in the bar at that time.

Fifth, that Officer Mock exited the bar and while placing the items in his patrol car, he observed [appellant] exit the bar from a side door.

Sixth, that Officer Mock stopped [appellant] and inquired as to the ownership of the VCR and eight tapes.

Seventh, that [appellant] told Officer Mock he was the owner of the items.

Eighth, that Officer Mock inquired of [appellant] a receipt for the goods in question.

Ninth, that [appellant] failed to produce a receipt. Whereupon he was arrested by Officer Mock.

N.T. December 28, 1987 at 19–20.[1] Based upon these findings, the suppression court concluded, as a matter of law, that "the Officer had probable cause to arrest [appellant]" and "the VCR is admissible evidence in that [appellant] had effectively abandoned it and this was not the result of unlawful police conduct." Trial Court Opinion at 3.

Appellant asserts that his fourth amendment rights were violated when Officer Mock seized the VCR and tapes without having probable cause to believe that the items were connected with criminal activity. The Commonwealth, however, argues that the trial court properly denied the motion to suppress because appellant had abandoned the VCR and tapes prior to Officer Mock's seizure. "The Fourth Amendment to the Constitution of the United States 'protects people from unreasonable government intrusions into their legitimate expectations of privacy.'" *Commonwealth v. Shaw*, 476 Pa. 543, 550, 383 A.2d 496, 499 (1978). *See also Commonwealth v. Flewellen*, 475 Pa. 442, 446, 380 A.2d 1217, 1219 (1977); *Commonwealth v. Rispo*, 338 Pa. Super. 225, 230, 487 A.2d 937, 939 (1985). The Commonwealth bears the burden of proving by a preponderance of the evidence that a search or seizure did not violate the fourth amendment. *Commonwealth v. Silo*, 480 Pa. 15, 21, 389 A.2d 62, 65 (1978). "With few exceptions, the Fourth Amendment requires that law officers obtain a warrant

---

1. We note that the suppression court's fact findings are supported by the record, and appellant does not contest these findings.

issued by a neutral magistrate before they intrude into a place of privacy." *Commonwealth v. Rispo, supra; Commonwealth v. Morrison,* 275 Pa.Super. 454, 457, 418 A.2d 1378, 1379 (1980) (en banc). *See also Commonwealth v. Holzer,* 480 Pa. 93, 102, 389 A.2d 101, 106 (1978). One such exception to the warrant requirement exists when the property seized has been abandoned. *Commonwealth v. Vecchione,* 327 Pa.Super. 548, 557, 476 A.2d 403, 407–08 (1984). "[I]t is well-settled that no one has standing to complain of a search of seizure of property that he has voluntarily abandoned." *Commonwealth v. Shoatz,* 469 Pa. 545, 553, 366 A.2d 1216, 1220 (1976). In *Shoatz,* our Supreme Court outlined the test for determining whether an abandonment has occurred:

The theory of abandonment is predicated upon the clear intent of an individual to relinquish control of the property he possesses.

Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. *United States v. Cowan,* 2d Cir. 1968, 396 F.2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. *United States v. Manning,* 5th Cir.1971, 440 F.2d 1105, 1111. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. See *Abel v. United States,* supra [362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) ]; *United States v. Edwards,* 5th Cir.1971, 441 F.2d 749; *Lurie v. Oberhauser,* 9th Cir.1970, 431 F.2d 330. The issue is not abandonment in the strict property-right sense, *but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. United States v. Edwards,* supra, 441 F.2d at 753; *cf. Katz v. United States,* 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.

. . .

469 Pa. at 553, 366 A.2d at 1219–20 (1976) (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973)) (emphasis supplied). *See also Commonwealth v. Anderl*, 329 Pa.Super. 69, 82–83, 477 A.2d 1356, 1362–63 (1984); 1 W. LaFave, *Search and Seizure*, § 2.6(b), at 467 (1987) ("The fundamental question is whether the relinquishment occurred under circumstances which indicate [the defendant] retained no justified expectation of privacy in the object.").

■ Here, a review of the suppression testimony convinces us that the Commonwealth did not meet its burden of showing that appellant clearly intended to relinquish his reasonable expectation of privacy in the VCR and tapes. Officer Mock was the only witness to testify at the suppression hearing. Officer Mock stated that on the date in question, he was on routine patrol in a marked police car in the Germantown section of Philadelphia. N.T. December 28, 1987 at 2–3. With specific regard to his seizure of the VCR and tapes, the Officer then testified as follows:

BY [the prosecutor]:

Q. How far from [appellant] were you when you first saw him?

A. ... I would say about 15, 20 feet.

Q. Could you describe for the Court exactly what you observed [appellant] doing at that time?

A. I observed him carrying a green trash bag and I could see what appeared to be a VCR sticking out.

Q. And what occurred after you made this observation?

A. He was headed southbound. I was headed northbound. So I had to make a U-turn. I made the U-turn and I was now southbound on Baynton and I observed the male walk into the bar at Baynton and Chelten.

\* \* \* \* \* \*

Q. Officer, why did you make a U-turn and come back down the other way?

\* \* \* \* \* \*

A. Because I thought I saw what appeared to be a VCR that the male was carrying, and I was going to investigate him.

Q. Could you describe for the Court what you observed on your way back down Baynton?

A. I observed the male walk into the bar at Baynton and Chelten.

Q. So what did you do as a result of that?

A. I went into the bar also.

\* \* \* \* \* \*

Q. Did you find anything?

A. I found a green trash bag with a VCR and eight tapes in it on the bench inside the bar.

Q. Was that the same bar you had seen [appellant] go into, or not?

A. Yes.

Q. And how soon after you saw [appellant] go into that bar did you find the green trash bag, the VCR and the tapes?

A. Almost immediately.

Q. Were you able to tell whether that was the same items you had seen [appellant] with earlier?

A. It appeared to be, yes.

\* \* \* \* \* \*

Q. Now, what did you do with the items you found?

A. Well, I looked for the male, and I couldn't find him in the bar. So I took the VCR and the tapes out and called for a backup.

[Appellant's counsel]: I'm sorry. I didn't hear that. You took the VCR and tapes out?

The Witness: Out of the bar and put them in my patrol car and called for back-up because I was going to search the bar. Then I observed the male come out of the side porch of the bar.

*Id.* at 3–6.

The difficulty with this case is that there was no testimony regarding the circumstances in the bar at the time

appellant left the VCR and tapes. If the record revealed that appellant left the VCR and tapes in a *crowded* bar, or that he left them in a position where other people then present would have had easy access to them, or that he left the premises or left his possessions unattended for an extended period of time, we could conclude that any expectation of privacy that appellant retained in the items was unreasonable. Conversely, if the record revealed that the bar was deserted, and that appellant left the items unattended for a few minutes while he was in another room, we could conclude that appellant *did* retain a reasonable expectation of privacy in his possessions. Here, however, the officer did not say how large the bar was, whether it was crowded or deserted, or whether other patrons or employees had easy access to the items. Moreover, the officer did not testify regarding how much time elapsed between his entry into the bar and his seizure of the items, or the extent of his search for appellant. Instead, the officer merely stated that he saw the evidence "almost immediately" after entering the bar, that he "looked for" appellant in the bar but could not find him, and that he then seized the evidence. On this record, we cannot conclude that the Commonwealth proved by a preponderance of the evidence that appellant clearly intended to relinquish his expectation of privacy in the VCR and tapes. *See Commonwealth v. Shoatz, supra.*

We derive further support for our conclusion from the fact that there is no evidence on this record to suggest that appellant left the VCR and tapes in response to Officer Mock's investigation. Officer Mock did not state that appellant looked at him or was aware of his presence as he rode by in the police cruiser, nor did he suggest that appellant entered the bar in an attempt to elude him. Indeed, the only actual confrontation between the officer and appellant occurred *after* the officer had seized the items and put them in the police cruiser. The case is thus distinguishable from the typical case in which abandonment has been found because the defendant attempted to disassociate himself from incriminating evidence by throwing it away upon the lawful approach of police. *See, e.g., Commonwealth v.*

*Hall,* 475 Pa. 482, 380 A.2d 1238 (1977); *Commonwealth v. Bulling,* 331 Pa.Super. 84, 480 A.2d 254 (1984); *Commonwealth v. Derrick,* 322 Pa.Super. 517, 469 A.2d 1111 (1983). *See also* 1 W. LaFave, *Search and Seizure,* § 2.6(b), at 466 & nn. 39–43. In the instant case, the most that can be said is that appellant left his property unattended for an undetermined period of time.

In summary, we hold that the trial court erred in concluding that appellant abandoned his reasonable expectation of privacy in the VCR and tapes.[2] Because this evidence was seized in violation of appellant's constitutional rights, it should have been suppressed by the trial court. *See Commonwealth v. Johnson,* 474 Pa. 512, 520, 379 A.2d 72, 75 (1977); *Commonwealth v. Rispo, supra.*

For the foregoing reasons, we vacate the judgment of sentence and remand for a new trial.

VACATED AND REMANDED. JURISDICTION IS RELINQUISHED.

**2.** We note that the Commonwealth does not dispute appellant's claim that the seizure here cannot be upheld based on the officer having probable cause to believe that the VCR and tapes were connected with criminal activity. We may, of course, affirm the suppression order on a ground other than that relied upon by the court below. Thus, if it appeared from the record that Officer Mock had probable cause to believe that the evidence was connected with criminal activity, we could affirm the suppression court on that ground. Here, however, we have reviewed the suppression testimony and we agree with appellant that the officer did not have probable cause to seize the items. At the time the seizure occurred, Officer Mock did not have any information that a crime had been committed. Moreover, as we have noted in the text above, there is no record evidence to suggest that appellant was attempting to flee from the officer, or that he left the VCR and tapes in response to the officer's investigation. Even assuming that the officer was warranted in concluding that appellant's conduct was suspicious, we cannot hold that these circumstances are sufficient to provide probable cause to believe that the evidence was connected with criminal activity. *Compare Commonwealth v. Mackie,* 456 Pa. 372, 320 A.2d 842 (1974) (probable cause to arrest); *Commonwealth v. Pincavitch,* 206 Pa.Super. 539, 214 A.2d 280 (1965) (same). *Cf. Campbell v. United States,* 273 A.2d 252, 255 (D.C.App.1971) ("Our often criticized society has not yet deteriorated to the point where we can say that a man who carries openly, on the street, a large household appliance is probably a thief.").