J-S02039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT WALKER | : | |
| | : | |
| Appellant | : | No. 616 EDA 2018 |

Appeal from the Judgment of Sentence January 25, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001365-2016

BEFORE: GANTMAN, P.J.E., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.: **FILED MARCH 07, 2019**

Appellant, Robert Walker, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, after his bench trial convictions for possession of a firearm prohibited, firearms not to be carried without a license, and carrying firearms in public in Philadelphia.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On November 12, 2015, plainclothes police officers in an unmarked car stopped at the intersection of Lippincott and Croskey Streets in Philadelphia, adjacent to a well-known drug corner. Police observed Appellant and an unidentified male walking southbound on Croskey Street. Police heard a hooting noise,

_____

[1] 18 Pa.C.S.A. §§ 6105, 6106, and 6108, respectively.

which is a warning signal that police are in the area, and Appellant and his companion turned and walked northbound on Croskey Street toward the police. Police drove southbound on Croskey Street as Appellant walked toward a parked van with his hands in his pockets. Sergeant Berg exited the vehicle and lost sight of Appellant behind the van. Sergeant Berg bent over to keep track of Appellant and witnessed him place a dark object behind the front left wheel of the van. Appellant emerged from the van and began walking southbound, away from the officers. At this point, Officer Lally discovered a firearm behind the front left wheel of the van and signaled to Sergeant Berg about the discovery. Sergeant Berg then stopped Appellant and subsequently arrested him.

Appellant filed a motion to suppress on April 28, 2016. On January 25, 2018, the court held a hearing and denied the suppression motion. The court immediately proceeded to a bench trial and convicted Appellant of possession of a firearm prohibited, firearms not to be carried without a license, and carrying firearms in public in Philadelphia. The court sentenced Appellant that same day to an aggregate term of 35 to 70 months' imprisonment plus 5 years' probation. Counsel made a motion to withdraw, which the court granted, and subsequently appointed new counsel. On February 20, 2018, the court resentenced Appellant to an adjusted sentence; however, the aggregate term remained 35 to 70 months' imprisonment plus 5 years' probation. Appellant timely filed a notice of appeal on February 22, 2018. On

March 5, 2018, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant complied.

Appellant raises the following issue for our review:

> DID THE TRIAL COURT ERR WHEN IT DENIED [APPELLANT'S] PRE-TRIAL MOTION TO SUPPRESS PHYSICAL EVIDENCE WHERE:
>
> [APPELLANT] WAS SEIZED WHEN THE OFFICER (SERGEANT BERG) EXITED HIS POLICE VEHICLE TO APPROACH [APPELLANT] THEREBY BEGINNING A PURSUIT OF [APPELLANT] WHO WAS LEAVING THE OFFICER'S VIEW; A SEIZURE OCCURS WHEN A PURSUIT BEGINS; THE FIREARM RECOVERED BY POLICE WAS ALLEGEDLY DISCARDED BY [APPELLANT] AFTER THE OFFICER EXITED THE POLICE VEHICLE AND BEGAN TO FOLLOW [APPELLANT] WHO WAS WALKING BEHIND A VAN; THE OFFICER DID NOT HAVE REASONABLE SUSPICION OR PROBABLE CAUSE SUFFICIENT TO JUSTIFY A SEIZURE OF [APPELLANT] AT THE TIME THAT THE OFFICER BEGAN THIS PURSUIT. ACCORDINGLY, THE FIREARM DISCARDED AFTER THIS SEIZURE BEGAN AND SHOULD HAVE BEEN SUPPRESSED AS FRUIT OF THE POISONOUS TREE?

(Appellant's Brief at 5).

Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal

- 3 -

conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa.Super. 2012), *appeal denied*, 618 Pa. 684, 57 A.3d 68 (2012).

Appellant argues that walking toward police in a high crime area does not amount to reasonable suspicion or probable cause of criminal activity. Appellant complains that when police pursued Appellant, it amounted to an illegal seizure. Appellant submits he abandoned the firearm while police pursued him, which constitutes coerced abandonment and the court should have suppressed the firearm recovered. Appellant concludes this Court should vacate the judgment of sentence and remand for a new trial in which the Commonwealth is precluded from presenting evidence obtained from the illegal seizure. We disagree.

Contacts between the police and citizenry fall within three general classifications:

The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause.

- 4 -

*Commonwealth v. Goldsborough*, 31 A.3d 299, 305 (Pa.Super. 2011) (quoting *Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005)).

"An investigative detention…constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution." *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (quoting *Commonwealth v. Stevenson*, 832 A.2d 1123, 1127 (Pa.Super. 2003)). To institute an investigative detention, an officer must have reasonable suspicion of criminal activity:

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Jones, supra* (internal citation omitted).

"Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Thompson*, 604 Pa. 198, 203, 985 A.2d 928, 931 (2009) (internal quotation marks omitted).

The question we ask is not whether the officer's belief was

correct or more likely true than false. Rather, we require **only a probability**, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Id.* (emphasis in original) (internal citations and quotation marks omitted).

Further, "to prevail on a suppression motion, a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership or possessory interest." *Commonwealth v. Dowds*, 563 Pa. 377, 388, 761 A.2d 1125, 1131 (2000). Pennsylvania law sets forth the concept of abandonment as follows:

The theory of abandonment is predicated upon the clear intent of an individual to relinquish control of the property he possesses.

Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*Commonwealth v. Williams*, 551 A.2d 313, 315 (Pa.Super. 1988) (quoting *Commonwealth v. Shoatz*, 469 Pa. 545, 553, 366 A.2d 1216, 1219-20 (1976)) (internal citations and emphasis omitted). Evidence of abandonment must plainly demonstrate the individual's attempt to dissociate from the

property. ***Commonwealth v. Johnson***, 636 A.2d 656 (Pa.Super. 1994), *appeal denied*, 539 Pa. 646, 651 A.2d 534 (1994) (holding defendant who made conscious effort to dissociate himself from drug supply in event of police intervention had effectively abandoned any reasonable expectation of privacy in bag containing narcotics).

Police officers may not force or coerce abandonment of evidence through improper or unlawful acts; however, police presence does not itself render the abandonment forced or coerced. ***Commonwealth v. Pizarro***, 723 A.2d 675, 679-80 (Pa.Super. 1998) (stating police cruiser passing through neighborhood on routine patrol does not amount to police coercion compelling defendant's abandonment of contraband); ***Commonwealth v. Riley***, 715 A.2d 1131, 1134 (Pa.Super. 1998), *appeal denied*, 558 Pa. 617, 737 A.2d 741 (1999) (holding mere approach by law enforcement official does not amount to police coercion requiring suppression of evidence discarded by defendant).

Instantly, the trial court reasoned:

> Sergeant Berg testified that he had ten years of experience as a Philadelphia police officer, and that on November 12, 2015, he had been working in this police district for five years. He was on patrol with a partner, in plain clothes, in an unmarked vehicle, in the 3100 Block of North Croskey Street, within his routine patrol area. The Sergeant knew this to be a high violence, high crime area, adjacent to a well-known drug corner, where multiple arrests had been made for narcotics and firearms violations. Prior to this date, the Sergeant had seen firearms concealed by placing them under a vehicle on multiple occasions.
>
> While stopped at the intersection, Sergeant Berg observed Appellant and unknown male walking down the street. He

then heard a hooting noise that he recognized as a warning signal that police are coming. At the sound of hooting, Appellant and his companion turned toward the officers in their older model, gray Crown Victoria, and immediately started walking [northbound]. As the police car turned to travel on Croskey, the unknown male entered a house, while Appellant walked rapidly with his hands in his pockets, heading toward a parked van. The police car stopped, and the Sergeant started to walk in the direction of van.

As the Sergeant neared the front of his police vehicle, Appellant went out of sight behind the van. The Sergeant then bent over to look under the van, whereupon he observed a hand place a black object on the ground, then Appellant immediately emerged and continued walking away. The Sergeant asked Appellant to step over to the wall and place his hands on the wall, at which point he was frisked. A firearm was found on the ground by the van where the Sergeant had observed a hand place a black object.

Initially, there was no custodial encounter between Appellant and the police. They were simply driving on the street, then stopping to observe. Appellant voluntarily abandoned his gun under the van. Only after he had done so did the police endeavor to stop him based on their experience, the location known for criminal activity, and Appellant's unprovoked abandonment of the firearm and flight, gave them a reasonable belief that there was criminal activity afoot.

Even if there had not been reasonable, articulable suspicion to believe that criminality was afoot to support the stop and frisk of Appellant, the firearm was not a fruit of that stop.

\* \* \*

Here, the conduct of police was actually even less than the mere encounters which the courts have found to be non-coercive and to not constitute seizures. Appellant had already abandoned the firearm, at a point when the police were doing nothing more than stopping their car and standing in the street near the front of the car, watching. There was nothing about this conduct that was coercive, or

- 8 -

which constituted a seizure.

Under the all the facts and circumstances, and the facts as reasonably believed by police, there was reasonable suspicion to stop Appellant. Moreover, his decision to discard the firearm, which proceeded any police efforts to stop him, was not unlawfully coerced.

(Trial Court Opinion, filed June 6, 2018, at 3-6) (internal citations omitted).

The record supports the trial court's analysis and decision. **See Hoppert,**

**supra**; **Goldsborough, supra**; **Riley, supra**; **Williams, supra**.

Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/19

- 9 -