J-S10039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LYDELL WALKER | : | |
| | : | |
| Appellant | : | No. 3392 EDA 2017 |

Appeal from the Judgment of Sentence September 28, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0012794-2014

BEFORE:   GANTMAN, P.J.E., STABILE, J., and COLINS*, J.

MEMORANDUM BY GANTMAN, P.J.E.:                    **FILED APRIL 16, 2019**

Appellant, Lydell Walker, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for possession of a controlled substance, possession with intent to deliver ("PWID"), possession of marijuana, possession of drug paraphernalia, possession of a firearm prohibited, firearms not to be carried without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of crime ("PIC").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.

> On October 24, 2014, at approximately 5:25 a.m., Philadelphia police officers and probation officers for the YVRP ("Youth Violence Reduction Partnership") executed a bench warrant for a juvenile, [K.W.], at 1420 S. Allison

---

[1] 35 P.S. §§ 780-113(a)(16), (30), (31), (32); 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 6108, and 907(a), respectively.

---

*   Retired Senior Judge assigned to the Superior Court.

Street, Philadelphia, PA. When the police and probation officers got to 1420 S. Allison Street, they knocked, announced "police," and then heard scrambling and moving around as if the individuals in the house were attempting to flee. At that point, a probation officer for YVRP forced entry and as soon as the officers entered the house, they noticed…two males exiting the rear of the house. At that point, Police Officer Nock ran out of the front of the house and around the block. As he was running around the block, he noticed two males fitting the same description as the individuals [who] just ran out of the back of the house standing on the corner of 56th [Street] and Springfield [Avenue].

At that point, Officer Nock announced "police," and the two individuals separated. [Appellant] ran westbound on Springfield [Avenue] and the other male ran southbound on 56th Street. Officer Nock then chased after Appellant and as [Officer Nock] chased after [Appellant], Appellant continued to touch his waistband, put his hands up and yelled, "I don't have anything. I don't have anything." Officer Nock yelled back, "if you don't have anything, stop running." Shortly after [Officer Nock] said that, a .45 caliber gun fell from the right side of Appellant's waistband to the ground. As it fell to the ground, Appellant stopped and then ran back to attempt to retrieve the gun. Officer Nock then challenged Appellant by drawing his weapon and saying "don't do it." Appellant then turned around and took off again. Officer Nock ran after him and caught Appellant about a block away at 57th [Street] and Chester Avenue on the corner. Officer Nock then returned to the area where he saw the gun fall from [Appellant's] person and recovered the firearm, which was loaded with thirteen (13) live rounds.

[On July 20, 2015,] Appellant's counsel moved to suppress the evidence under the Fourth and Fourteenth Amendments of the U.S. Constitution, [and] Article 1, Section 8 of the Pennsylvania Constitution. Appellant's counsel conceded that the [October 24, 2014 search warrant] was lawful, but argued that the police and probation officers should not have been at the residence (1420 S. Allison Street, Philadelphia, PA) altogether as it was not where [K.W.], whom they executed the [bench] warrant for, lived. Appellant's counsel also argued that the officer should not

- 2 -

have given chase and the chase would be dispositive of the firearm only, not the drugs inside the house.

The Commonwealth presented testimony from two officers, Probation Officer Mark Costanzo and Police Officer Nock. Mr. Costanzo is a probation officer with the City of Philadelphia and works with YVRP, which deals with high-risk juveniles. YVRP probation officers meet with the juveniles ten times a month and do patrols with police in the area where they're stationed. Mr. Costanzo supervised [K.W.], Appellant's brother, and on October 23, 2014, [Mr. Costanzo] received a call from De La Salle Vocational School informing him that [K.W.] had come to school with a large amount of money and drug paraphernalia. As a result, Mr. Costanzo told [K.W.] to come in for a drug screen. When [K.W.] went in for the drug screen, Mr. Costanzo was told by the drug lab that [K.W.] had attempted to fake his urine test. Mr. Costanzo then called [K.W.] and told him that he needed to come back and take the urine screen. [K.W.] failed to return for the urine screen, and consequently, Mr. Costanzo prepared a motion to inform the judge that [K.W.] was on probation with the Honorable Amanda Cooperman, who then issued a bench warrant for [K.W.'s] arrest on October 23, 2014. Mr. Costanzo informed the [c]ourt that 1420 S. Allison Street was [K.W.'s] address of record, although he also stayed at 1025 Clifton Avenue, Collingdale, PA.

On October 24, 2014, Appellant was arrested and charged with [PWID]; Possession of a Firearm Prohibited; Firearms Not to be Carried without a License; Intentionally Possessing Controlled Substance by Person Not Registered; Possession of Marijuana; Use/Possession of Drug Paraphernalia; Carrying Firearms in Public in Philadelphia; [and PIC]. Following a preliminary hearing held on November 13, 2014, all charges were held for court. On September 10, 2015, [the court] heard testimony on Appellant's Motion to Suppress based on the four corners of the search warrant. On December 1, 2015, [the court] issued an Order Denying the Motion to Suppress the Evidence. On July 14, 2017, [after a stipulated bench trial,] Appellant was found guilty on all charges. On September 28, 2017, Appellant was sentenced to an aggregate sentence of 5 [to] 10 years' state incarceration followed by 5 years' reporting probation. On

- 3 -

October 4, 2017, Appellant filed a [*pro se*] Motion for Reconsideration of Sentence and on October 16, 2017, Appellant filed a [counseled] Notice of Appeal to the [this Court]. On October 16, 2017, Appellant's counsel filed a [voluntary] Statement of [Errors] Complained of on Appeal [pursuant to Pa.R.A.P. 1925(b)] on behalf of Appellant.

(Trial Court Opinion, filed July 23, 2018, at 1-4) (internal citations omitted).

On December 14, 2017, this Court issued a rule to show cause why the appeal should not be dismissed as interlocutory because Appellant had filed a notice of appeal before the court entered an order regarding Appellant's post-sentence motion. Appellant's counsel responded that same day, conceding he had filed the appeal prematurely because counsel was unaware of the *pro se* post-sentence motion. Counsel further stated he had no objection to this Court quashing the earlier appeal. On February 2, 2018, the post-sentence motion was denied by operation of law. Appellant filed a second notice of appeal on February 7, 2018, along with a voluntary Rule 1925(b) statement. On August 23, 2018, this Court issued an order that referred the issue raised by the rule to show cause to a merits panel.[2]

Appellant raises the following issue for our review:

DID THE [TRIAL] COURT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTION TO SUPPRESS?

_____

[2] This appeal is properly before this Court. Appellant's premature notice of appeal relates forward to February 2, 2018, the date the *pro se* post-sentence motion was denied by operation of law. **See** Pa.R.A.P. 905(a)(5) (stating: "A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").

(Appellant's Brief at 6).

Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa.Super. 2012), *appeal denied*, 618 Pa. 684, 57 A.3d 68 (2012).

Appellant argues police had no lawful purpose to enter the residence at 1420 S. Allison Street with only an arrest warrant for K.W. Appellant contends probation officers visited K.W. at 1025 Clifton Avenue many times over a three-month period and knew K.W. only went to 1420 S. Allison Street once, for Appellant's birthday. Appellant avers police could not enter 1420 S. Allison Street without reasonable belief that K.W. lived within that residence or a valid search warrant.

Appellant further argues that even if police lawfully entered his residence, they had no reasonable suspicion or probable cause to chase Appellant after he fled the residence. Appellant submits police did not observe drugs in plain view before they chased Appellant; instead, Officer Nock immediately went around the outside of the residence after he observed Appellant and another man run out the back door. Appellant complains police provoked him to flee, and even though Appellant lived in a high crime area, Officer Nock did not state Appellant's flight raised suspicion that criminal activity was afoot. Appellant contends the court should have suppressed the recovered firearm as a result of a forced abandonment and the narcotics as fruit of the poisonous tree. Appellant concludes this Court should vacate the judgment of sentence and remand for further proceedings. We cannot agree.

Preliminarily, an appellant bears the burden to ensure the certified record on appeal is complete and contains all the necessary materials for the reviewing court to perform its duty. *Commonwealth v. Bongiorno*, 905 A.2d 998, 1000 (Pa.Super. 2006) (*en banc*), *appeal denied*, 591 Pa. 688, 917 A.2d 844 (2007). This Court is limited to considering only those materials which have been certified in the record on appeal. Pa.R.A.P. 1921; *Commonwealth v. Osellanie*, 597 A.2d 130, 131 (Pa.Super. 1991). Where a claim is dependent upon materials not provided in the certified record, the claim is waived. *Commonwealth v. Muntz*, 630 A.2d 51, 55 (Pa.Super. 1993). Specifically, an appellant's claim is waived where the appellant fails to

include exhibits in the certified record necessary for appellate review. *Commonwealth v. Proetto*, 771 A.2d 823, 834 (Pa.Super. 2001), *affirmed*, 575 Pa. 511, 837 A.2d 1163 (2003).

Instantly, the first part of Appellant's argument rests primarily on the validity of the October 23, 2014 bench warrant for K.W. Appellant's omnibus pretrial motion did not attach that warrant for the court's review. Instead, Appellant attached the later search warrant and affidavit of probable cause from October 24, 2014, which the police obtained after they had entered Appellant's residence to execute the bench warrant for K.W. and saw drugs in plain view. At the suppression hearing on September 10, 2015, Appellant argued the police had no reason to obtain a bench warrant for K.W. at the 1420 S. Allison Street address and no right to enter that residence. Appellant's failure to provide the suppression court with a copy of the bench warrant for K.W. and include it in the certified record precludes this Court's ability to review the bench warrant for its integrity. *See Bongiorno, supra*. Therefore, this portion of Appellant's argument is waived. *See Proetto, supra*; *Muntz, supra*.

Appellant focused the remaining portion of his argument on appeal on the gun recovered during his flight from the police, which implicates the following principles: contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by

any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 305 (Pa.Super. 2011) (quoting *Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005)).

"An investigative detention…constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution." *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (quoting *Commonwealth v. Stevenson*, 832 A.2d 1123, 1127 (Pa.Super. 2003)). To institute an investigative detention, an officer must have reasonable suspicion of criminal activity:

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Jones, supra* (internal citation omitted). *See also Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa.Super. 2009) (*en banc*) (stating presence in high crime area can support existence of reasonable suspicion).

"Probable cause is made out when the facts and circumstances which

- 8 -

are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime." ***Commonwealth v. Thompson***, 604 Pa. 198, 203, 985 A.2d 928, 931 (2009) (internal quotation marks omitted).

> The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability**, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Id.*** (emphasis in original) (internal citations and quotation marks omitted).

***See also Commonwealth v. Cotton***, 740 A.2d 258 (Pa.Super. 1999) (stating bench warrant establishes probable cause for arrest).

Further, "to prevail on a suppression motion, a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership or possessory interest." ***Commonwealth v. Dowds***, 563 Pa. 377, 388, 761 A.2d 1125, 1131 (2000).

> Pennsylvania law sets forth the concept of abandonment as follows:
>
> > The theory of abandonment is predicated upon the clear intent of an individual to relinquish control of the property he possesses.
> >
> > Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. The issue is

> not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*Commonwealth v. Williams*, 551 A.2d 313, 315 (Pa.Super. 1988) (quoting *Commonwealth v. Shoatz*, 469 Pa. 545, 553, 366 A.2d 1216, 1219-20 (1976)) (internal citations and emphasis omitted).  Evidence of abandonment must plainly demonstrate the individual's attempt to dissociate from the property.  *Commonwealth v. Johnson*, 636 A.2d 656 (Pa.Super. 1994), *appeal denied*, 539 Pa. 646, 651 A.2d 534 (1994) (holding defendant who made conscious effort to dissociate himself from drug supply in event of police intervention had effectively abandoned any reasonable expectation of privacy in bag containing narcotics).

Police officers may not force or coerce abandonment of evidence through improper or unlawful acts; however, police presence does not itself render the abandonment forced or coerced.  *Commonwealth v. Pizarro*, 723 A.2d 675, 679-80 (Pa.Super. 1998) (stating police cruiser passing through neighborhood on routine patrol does not amount to police coercion compelling defendant's abandonment of contraband); *Commonwealth v. Riley*, 715 A.2d 1131, 1134 (Pa.Super. 1998), *appeal denied*, 558 Pa. 617, 737 A.2d 741 (1999) (holding mere approach by law enforcement official does not amount to police coercion requiring suppression of evidence discarded by defendant).

Instantly, early on October 24, 2014, Mr. Costanzo and Officer Nock,

with two other officers, went to 1420 S. Allison Street to execute a bench warrant for K.W., based on the information from K.W. that he was visiting Appellant. Police knocked and announced their presence and heard scrambling from within the residence. Police knocked down the door and saw two males exiting the house through the rear door. Officer Nock ran around the block outside to the back of the house, which is located in a high crime area, and saw two males who fit the description of the males who had fled the house. Officer Nock announced "police" and both males fled in separate directions. A .45 caliber handgun fell from Appellant's waistband as he ran, and Officer Nock arrested Appellant and recovered the weapon.

When the police went to 1420 S. Allison Street to execute a bench warrant for K.W., they saw two males run out the rear door. Officer Nock immediately ran to the back outside of the house, with reasonable suspicion that one of the individuals was K.W. *See Foglia, supra*; *Jones, supra*. Officer Nock found the two men who had fled and announced his presence. *See id.*; *Cotton, supra*. Both men again fled, and a firearm fell from Appellant's waistband. Under these circumstances, the pursuit of Appellant did not force or coerce him to abandon the firearm, where the weapon fell from his waistband during the second flight. *See Johnson, supra*; *Williams, supra*. Therefore, the court properly denied suppression of the firearm. Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Colins joins this memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/19